## HOLMGREN v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 14, 1907.)

### No. 1,382.

1. CRIMINAL LAW—REVIEW ON WRIT OF ERROR—ASSIGNMENTS OF ERROR.

An assignment of error in a criminal case, based upon the fact that the jury were permitted to take with them to their room the indictment, on which was indorsed the verdict of the jury on a former trial finding the defendant guilty, cannot be considered by the appellate court, where the matter was not brought to the attention of the trial court until after the verdict was returned.

2. SAME—MATTERS REVIEWABLE—RULING ON MOTION FOR NEW TRIAL.

A judgment of conviction in a criminal case will not be reversed by an appellate court because of the overruling of a motion for a new trial based upon the ground that the jury took to their room the indictment, on which was recorded a former conviction of defendant, where such motion and the supporting affidavits were considered and passed upon by the trial court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, § 3071.]

3. SAME—EVIDENCE—ACCOMPLICES WITHIN RULES OF EVIDENCE.

On the trial of a defendant charged with perjury in giving false testimony in a proceeding for naturalization of an alien, the applicant for citizenship is not an accomplice in such sense as to require the jury to be cautioned in respect to his testimony, where it does not appear that defendant gave the false testimony at the instigation of such applicant.

4. PERJURY—ELEMENTS OF OFFENSE—FEDERAL STATUTE.

On the trial of a defendant charged with a violation of Rev. St. § 5395 [U. S. Comp. St. 1901, p. 3654], which denounces a penalty against one who "knowingly swears falsely" in making any oath under any law relating to naturalization, it is sufficient to warrant conviction if defendant knowingly and willfully testified falsely, and it is not necessary that his act should also have been corrupt or malicious.

[Ed. Note.—For cases in point, see ·Cent. Dig. vol. 39, Perjury, § 1.]

5. SAME—INSTRUCTIONS.

Instructions on the trial of a defendant charged with perjury in naturalization proceedings, under Rev. St. § 5395 [U. S. Comp. St. 1901, p. 3654], considered and approved.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Perjury, §§ 134-138.]

6. CRIMINAL LAW—FALSE SWEARING IN NATURALIZATION PROCEEDING—JURIS-
DICTION OF OFFENSE.
    A District Court of the United States has jurisdiction of a prosecution
under Rev. St. § 5395 [U. S. Comp. St. 1901, p. 3654], for false-swearing in
a naturalization proceeding, notwithstanding the fact that such proceed-
ing was in a state court.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law,
§ 170.]

In Error to the District Court of the United States for the Northern
District of California.

Marshall B. Woodworth, for plaintiff in error.

Robert T. Devlin, U. S. Atty., Benjamin L. McKinley, Asst. U. S.
Atty., and Frank A. Duryea, Special Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District
Judge.

GILBERT, Circuit Judge. The plaintiff in error was indicted for
violation of section 5395 of the Revised Statutes [U. S. Comp. St.
1901, p. 3654]. The indictment contained three counts; each count
charging the plaintiff in error with the commission of perjury when
testifying as a witness in three separate naturalization proceedings.
He had two trials in the court below. On the first trial he was acquit-
ted on counts 1 and 2, and convicted on count 3. The perjury of
which he was convicted on the third count consisted in swearing that
he had known in the United States the applicant for citizenship for five
years prior to the application; whereas, as alleged in the indictment,
he had not known him for more than four years prior to said appli-
cation. He was granted a new trial, and on the second trial he was
convicted under the third count and recommended to the mercy of
the court. A motion for a new trial was made and denied. A motion
in arrest of judgment was also denied.

One of the errors principally relied upon is that the District Court
permitted the jury to take with them, and keep during all of their delib-
erations in the jury room, the indictment, upon which was indorsed
the verdict of the jury on the previous trial, finding the plaintiff in er-
ror guilty on the third count of the indictment. This assignment of
error cannot avail the plaintiff in error, for the reason that the matter
was not brought to the attention of the court at any time until after a
verdict was returned; the submission of the indictment with the in-
dorsement thereon to the jury having been an accident for which
counsel for plaintiff in error was as much accountable as was any one.
Said the Court of Appeals for the Eighth Circuit, in St. Louis S. W.
Ry. v. Henson, 58 Fed. 531, 7 C. C. A. 349:

"It is the province of an appellate court to review the rulings of the trial
court on questions actually brought to the attention of the court and de-
cided by it."

And in Manufacturing Co. v. Joyce, 54 Fed. 332, 4 C. C. A. 368, it
was said:

"The rule is well established that the appellate court will only permit those
matters to be assigned for error that were brought to the attention of the court
below during the progress of the trial and then passed upon."

In Railway Co. v. Heck, 102 U. S. 120, 26 L. Ed. 58, Chief Justice Waite said:

"Our power is confined to exceptions actually taken at the trial. The theory of a bill of exceptions is that it states what occurred when the trial was going on."

But it is said that the alleged misconduct of the court and its officers, in submitting to the jury the indictment with the indorsement of the former verdict thereon, is ground for reversal in this court under another assignment of error, which is that the trial court denied the motion of plaintiff in error for a new trial. It is shown in the record by affidavits in support of the motion for a new trial that the indictment was delivered by a bailiff to the jury when they retired to consider their verdict, and that there was indorsed thereon:

"Tried April 5-6-7, 1906. Verdict, not guilty on the first and second counts of indictment, and guilty on the third count of the indictment. April 13, 1906. New trial granted."

The attorney for the plaintiff in error stated in his affidavit that he had no knowledge that the indictment had been handed to the jury, and that, when he saw the deputy clerk hand certain papers to the jury before retiring, he thought they were simply forms of verdict for the jury. There was an affidavit of one of the jurors that during the course of the deliberations of the jury the indictment, with the indorsements thereon, was read by the jury, and the affidavit of another juror to the same effect, with the further statement that in his mind the indorsement on the indictment created an unfavorable opinion against the plaintiff in error. This latter portion of the affidavit was not admissible, for the evidence of jurors as to the influences which affected their deliberations is inadmissible either to impeach or support the verdict. Clyde Mattox v. United States, 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917.

Whether the submission to the jury of an indictment upon which a former conviction is recorded is error for which a judgment should be reversed is a question upon which the decisions are not harmonious. In Green v. State, 38 Ark. 304, the court refused to reverse the judgment on that ground.

In 2 Thomp. on Trials, § 2591, it is said:

"It is not enough for counsel to show, in support of a motion for a new trial, that a particular paper was sent to the jury by the adverse party without his knowledge. It is his duty to ascertain what papers are sent to the jury before they leave the court."

In Forbes v. Commonwealth, 90 Va. 550, 19 S. E. 164, the Supreme Court of Appeals of Virginia held that it was not error to send to the jury the indictment, whereon is recorded the verdict of "guilty" of a former jury, where no objection is made until after the verdict.

In State v. Shores, 31 W. Va. 491, 7 S. E. 413, 13 Am. St. Rep. 875, the court, in refusing to reverse a judgment on that ground, said:

"The jury had seen the indictment with the indorsement, before any motion was made with reference thereto. Every member of the jury may have been in court and heard the verdict read against Hall, and still that would not have disqualified them as jurors."

In Cargill v. Commonwealth, 93 Ky. 578, 20 S. W. 782, the court said:

"But the appellant made no objection, and it was his business, as well as that of the other side, to see that the proper papers were taken by the jury, and, it not being done, to call the court's attention to it. By proper vigilance upon his part, his rightful objection would have been available to him."

In State v. Tucker, 52 Atl. 741, 75 Conn. 201, it was held that the failure to remove the record of the judgment of conviction given to the jury, or to direct them not to regard it, was not prejudicial to the defendant, where no objection was made until after the verdict. The court said:

"It is the duty of counsel, as well as of the court, to ascertain what papers are delivered to the jury."

In Smalls v. State, 105 Ga. 669, 31 S. E. 571, the court said:

"If a party desires a verdict rendered at a former trial of the same case concealed from the inspection of the jury, he should present a request to this effect."

In Sanders v. State, 131 Ala. 1, 31 South. 564, the court found no error in giving to the jury the indictment, on which was recorded the verdict of a former jury, and so held on the ground that the statute requires that the indictment should be taken by the jury on their retirement to consider their verdict.

In Hjeronymus v. State (Tex. Cr. App.) 83 S. W. 708, the statute forbade reference to a former trial and conviction or any allusion to it, but the court held that there was no error in the case under consideration, as it was not made to appear that the jury was aware of the existence of the former verdict until after they had agreed to convict, nor was it shown that the former verdict was used by them in arriving at their verdict.

In Harvey v. State, 35 Tex. Cr. R. 535, 34 S. W. 623, the court said:

"In our opinion the weight of the testimony in this regard is to the effect that the jury who tried the case did not notice or read, or attempt to read, the obliterated verdict, and if they had done so, in the absence of some showing of injury to appellant, we could not consider this as fundamental error, or such error as ought to have authorized the court below to grant a new trial."

In Anschicks v. State, 6 Tex. App. 524, the court said:

"It was the business of counsel to see to it that the jury were permitted to carry with them such papers as were proper to be used in their retirement."

In Ogden v. United States, 112 Fed. 523, 50 C. C. A. 380, however, the Circuit Court of Appeals for the Third Circuit held that the fact that, on the retirement of the jury in a criminal case, an officer of the court handed to them the indictments on which the defendant was tried, which were taken into the jury room with other papers for their consideration, and that indorsed on the back of each indictment was the verdict of a former jury finding the defendant guilty as charged therein, was such a violation of the rights of the defendant as to entitle him to a new trial, and that it was not incumbent upon him to show that such indorsements were actually read by the jurors or any of them. In that case the right of the defendant, against

whom a verdict of guilty had been rendered on the second trial, to move for a new trial and to have that motion considered on the reasons presented for it, had been denied by the trial court. That right was held to be an absolute one, the granting or refusal of which did not rest in the discretion of the court. Therein lies the important and essential difference between that case and the case at bar. In the Ogden Case, the trial court refused to permit the filing of a motion for a new trial, offered in due time, or to consider it or the affidavits offered in its support. The Circuit Court of Appeals said:

"It is not disputed that in the courts of the United States the allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed, and that the result cannot be made the subject of review by writ of error. The gravamen of the case, however, made by the plaintiff in error, is that the court below declined to exercise its discretion at all in refusing the motion for a new trial and excluding from its consideration the reasons filed in support thereof."

In the case at bar, the court below entertained the motion for a new trial and considered the affidavits which were filed in its support. The determination of a motion for a new trial involves the exercise of a wide discretion and a knowledge and appreciation of a case which ordinarily can be possessed only by the trial judge. It is for this reason that his ruling on the motion will not be reviewed in an appellate court, and this rule applies as well to a motion for a new trial presented on affidavits showing matters which occurred after the retirement of the jury to consider their verdict, as to other grounds for a new trial. Kerr v. Clampitt, 95 U. S. 188, 24 L. Ed. 493; Board of Commissioners v. Keene Savings Bank, 47 C. C. A. 464–476, 108 Fed. 505; Illinois Cent. R. Co. v. Coughlin, 75 C. C. A. 262, 145 Fed. 37; Clyde Mattox v. United States, 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917.

In the case last cited, the motion for a new trial was based on affidavits showing that communications had been made to the jury by the bailiff, and that certain newspapers had been read by the jury while considering their verdict. The court, while recognizing and affirming the rule that the allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed, and cannot be made the subject of review by writ of error, held that the case then under consideration was taken out of the rule, for the reason that the trial court had excluded the affidavits and had refused to exercise any discretion in respect to the matters stated therein.

In Kerr v. Clampitt, the court said:

"If the new trial be asked for irregularity in the proceedings of the court, jury, or adverse party, or for abuse of discretion by which either party was prevented from having a fair trial, or for misconduct of the jury, or accident or surprise which ordinary prudence could not have guarded against, or for newly discovered evidence, the application must be made upon affidavits. * * * But whether the application be made upon affidavits, or a statement thus prepared, the rulings thereon, whether of the district court originally, or of the Supreme Court of the territory on appeal, are not subject to review by this tribunal. We have no jurisdiction to revise the action of an inferior court upon the question of granting or refusing a new trial, however meritorious the grounds presented for its consideration or erroneous its decision."

In Louisville & N. R. Co. v. Sumner, 125 Fed. 719, 60 C. C. A. 487, the Circuit Court of Appeals for the Sixth Circuit said:

"It has often been said by this court that it will not review the action of the lower court in its disposition of a motion for a new trial or other matters addressed to its discretion, but we have held that for a refusal to exercise its discretion on a motion of which it should take cognizance a writ of error will lie."

In view of these authorities and the nature of the facts which were so presented in the affidavits on the motion for a new trial in the present case, we cannot see that the ruling of the court below in denying the new trial, in the exercise of the discretion which was vested in that court, is subject to review in this.

It is assigned as error that the court failed to warn the jury of the danger in convicting a defendant on the testimony of an accomplice. This assignment is based upon the theory that Frank Werta, the applicant for citizenship, was an accomplice with the plaintiff in error, who made the false oath. An accomplice is "one who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of a crime." People v. Bolanger, 71 Cal. 19, 11 Pac. 799; State v. Roberts, 15 Or. 197, 13 Pac. 896. To render one an accomplice, "he must in some manner aid or assist or participate in the criminal act, and by that connection he becomes equally involved in guilt with the other party by reason of the criminal transaction." People v. Smith, 28 Hun (N. Y.) 626. Mere knowledge on the part of a witness that the defendant purposes to commit a crime, or does commit a crime, does not render the witness an accomplice. There is nothing in the evidence in the bill of exceptions to show that Frank Werta was an accomplice within these generally accepted definitions. There is no evidence that he solicited the plaintiff in error to make the oath concerning his residence in the United States, or suggested the facts which were sworn to or assisted him in or incited him to the commission of the offense. On the other hand, the evidence conveys the impression that the affidavits as to the time of Werta's residence in the United States were furnished not at his own, but at the instigation of others. Under the circumstances, we think it would have been error to caution the jury on the theory that Werta's testimony was that of an accomplice.

It is said that the court erred in failing to charge the jury that the perjury must be corrupt and malicious, as well as knowing and willful. Section 5395 of the Revised Statutes [U. S. Comp. St. 1901, p. 3654], under which the plaintiff in error was indicted, denounces a penalty against one "who knowingly swears falsely in making any oath under any law relating to naturalization." The court in charging the jury instructed them that they must be satisfied beyond all reasonable doubt, not only that the testimony alleged to be given was false, but that it was willfully and knowingly false, "that he willfully and knowingly testified falsely." This was clearly sufficient. It was not necessary, in order to commit the offense defined in the statute, that there should have been any purpose of gain or any instigation of malice. In United States v. Edwards (C. C.) 43 Fed. 67, it was held that an indictment under the statute must allege that the false oath was taken willfully,

and that an allegation that it was corruptly taken does not embrace the element of willfulness.

Error is assigned to the refusal of the court to instruct the jury that they could not convict the defendant upon mere suspicion, however strong, but only upon evidence establishing his guilt to a moral certainty and beyond a reasonable doubt. The instruction so requested would have been proper, but the court was not bound to adopt it in the precise form in which it was presented, and there was no error in refusing it, in view of the fact that the court properly instructed the jury that the defendant was presumed to be innocent, that they would not be justified in returning a verdict of guilty unless they were satisfied to a moral certainty and after a consideration of all the evidence that he was guilty, and said:

"You are further charged that you cannot convict the defendant upon his statements, admissions, or actions alone. Independently of his statements or actions, there must be other evidence tending to show that the crime has been committed."

And further said that it was incumbent upon the government to prove the guilt of the defendant beyond a reasonable doubt and by the testimony of two witnesses, or by the testimony of one witness and corroborating circumstances with reference to each assignment of perjury.

It is contended that the court erred in refusing to instruct the jury as follows:

"Where a person who is a mariner comes to the United States, and afterwards follows his business as a mariner, if he has the intention of becoming a citizen of the United States, his abode on American vessels would constitute a residence in the United States."

The difficulty in the way of giving this instruction was that there was no testimony which warranted it. There is nothing in the evidence to show that Werta was serving upon American vessels prior to March, 1901. It is true that he had come to the United States in 1899 as a member of the crew of a Finnish ship, upon which ship he had signed articles for a round trip voyage to return to London; that while on said ship he remained at Mobile, Ala., about three months; and that thereafter he sailed away to Buenos Ayres on the same ship. His remaining for that period of time in the United States on a foreign vessel without having formed the intention to remain in the United States constituted no residence in the United States. The instruction was properly refused.

It is assigned as error that the court sustained the objection of the district attorney to the introduction in evidence of a document purporting to be the application and affidavit of Frank Werta to the local board of inspectors, which was offered for the purpose of impeaching Werta's testimony. The court ruled that the affidavit did not contradict the testimony of the witness. We cannot say that there was error in the ruling, for the affidavit is not embodied in the bill of exceptions.

It is contended that the court erred in overruling the demurrer of the plaintiff in error and his motion in arrest of judgment, on the ground that the court was without jurisdiction, since the alleged of-

fense was committed in naturalization proceedings in a state court. We held otherwise in Schmidt v. United States, 133 Fed. 257, 66 C. C. A. 389.

The judgment is affirmed.