## HILLMAN v. UNITED STATES.†

(Circuit Court of Appeals, Ninth Circuit. December 4, 1911.)

No. 2,003.

1. CRIMINAL LAW (§ 280*)—PLEA IN ABATEMENT—SUFFICIENCY.
   A plea in abatement to an indictment that books containing incriminating evidence were wrongfully produced before the grand jury was bad where it showed that the books belonged to corporations of which accused was president, and not to him individually.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 648; Dec. Dig. § 280.*]

2. CRIMINAL LAW (§ 280*)—PLEAS IN ABATEMENT—CONSTRUCTION.
   Pleas in abatement are to be strictly construed.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 645; Dec. Dig. § 280.*]

3. CRIMINAL LAW (§ 280*)—PLEAS IN ABATEMENT—SUFFICIENCY.
   A plea in abatement to an indictment that accused's private books and papers were wrongfully produced before the grand jury is insufficient where it fails to show that there was no other evidence before the grand jury upon which the indictment was found, but, on the contrary, shows that there was other evidence.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 648; Dec. Dig. § 280.*]

4. INDICTMENT AND INFORMATION (§ 10*)—PLEA IN ABATEMENT—GROUNDS—EVIDENCE BEFORE GRAND JURY.
   That competent evidence upon which an indictment was founded, consisting of books and documents, were unlawfully seized and produced before the grand jury, is no ground for abating the indictment.
   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 54; Dec. Dig. § 10.*]

5. INDICTMENT AND INFORMATION (§ 10*)—EVIDENCE BEFORE GRAND JURY—SELF-INCRIMINATING EVIDENCE.
   An indictment for using the mails to defraud purchasers of town lots by misrepresenting facts affecting their value was not subject to be quashed because private books belonging to accused were wrongfully produced before the grand jury, if the books contained no incriminating evidence.
   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 54; Dec. Dig. § 10.*]

6. INDICTMENT AND INFORMATION (§ 140*)—MOTION TO QUASH—JUDICIAL DISCRETION.
   A motion to quash an indictment is ordinarily addressed to the trial court's sound discretion.
   [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 474; Dec. Dig. § 140.*]

7. CRIMINAL LAW (§ 959*)—NEW TRIAL—REFUSAL TO HEAR ORAL EVIDENCE—JUDICIAL DISCRETION.
   Whether to hear oral evidence on motion for a new trial lies within the trial court's sound discretion.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2406; Dec. Dig. § 959.*]

8. CRIMINAL LAW (§ 959*)—NEW TRIAL—REFUSAL TO RECEIVE AFFIDAVITS—JUDICIAL DISCRETION.
   It was not an abuse of discretion to refuse to receive cumulative affidavits offered in support of motion for a new trial, after the motion had

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied February 6, 1912.

been taken under advisement, and the trial court was ready to announce his decision.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2406; Dec. Dig. § 959.*]

In Error to the District Court of the United States for the Western District of Washington, Northern Division.

Clarence Dayton Hillman was convicted of using the United States mails to defraud, and he brings error. Affirmed.

Frederick R. Burch and Oliver Hulback, for plaintiff in error.

Elmer E. Todd, U. S. Atty., and W. G. McLaren, Asst. U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. [1, 2] The plaintiff in error was indicted in October, 1910, for the offense of using the United States mails to defraud. Upon a trial before a jury he was convicted of the offense charged. On the writ of error from this court, he seeks a reversal of the judgment, relying mainly on errors assigned to the ruling of the trial court in overruling his plea in abatement to the indictment and his motion to quash the indictment. Some two weeks after he was indicted, he filed his plea in abatement, alleging, in substance, that on September 20, 1910, subpœnas had been issued for a number of witnesses to appear before the grand jury for the purpose of testifying as to facts and transactions relative to investigations of the business methods of the defendant with a view to returning a true bill of indictment against him; that at that time he was engaged in the real estate business in the city of Seattle, at certain named offices, which offices were also the offices of the Boston Harbor, Steamship & Land Company, the Hillman Investment Company, and the C. D. Hillman Snohomish County Railroad & Land Company, all corporations organized under the laws of Washington, and that the defendant was president of each thereof, and in possession of and control of all books, documents, and papers belonging to said corporations; "that each and every of said books, documents, and papers were the private individual books, documents, papers, and accounts of defendant and of said corporations, of which defendant was the sole and lawful custodian." The plea alleges that on September 21, 1910, two deputy United States marshals and one post office inspector appeared at the said offices of the defendant in his absence therefrom for the purpose of serving a subpœna duces tecum upon Edward D. Manning, an employé and bookkeeper of the defendant, commanding him to be and appear before the federal grand jury then in session in the city of Tacoma at 10 o'clock the next morning; and the plea set forth the subpœna, by the terms of which Manning was required to appear before the grand jury and testify, and produce with him the books of the three corporations so named and one other corporation, to wit, the Birmingham Land Company, to wit, "all books of account showing amounts received from the sale

of land in Boston Harbor, Pacific City, Birmingham, and Saratoga, all books and contracts showing the number of sales agents employed since September 1, 1907, to sell land, all books of account showing the expenditures for advertising, printing, purchase of land and commission to agents." The plea alleges that, after service of the subpœna, the deputy marshals and post office inspector in insolent and arrogant manner demanded of Manning the delivery of the books to them; that Manning refused to comply, whereupon the officers procured boxes in which they placed the books, documents, and papers, and procured a dray and carried away the same to the city of Tacoma, where the grand jury was sitting, "which said books, documents, and papers consist of both the sole and separate books, documents, and papers of the defendant and the above corporations, respectively." The plea then alleges that one of the defendant's attorneys applied to the judge of the court below at his chambers for an order commanding said officers to return said books, documents, and papers to the defendant, and that on the following day, and after full argument of the matter on behalf of the defendant and by the district attorney, the judge overruled the motion and permitted said books, documents, and papers to go to the grand jury, and on September 22d and succeeding days said Manning appeared before the grand jury and was sworn and examined as a witness, and testified as to entries, accounts, computations, and all other matters contained in said books and papers; "that both said private and corporation books, documents, and papers contained evidence tending to incriminate defendant; that thereafter, on the 3d day of October, A. D. 1910, and after the examination of said books, documents, and papers as above, the aforementioned grand jury returned a true bill of indictment against the above defendant, * * * which said indictment charged defendant with an infamous crime, to wit, using the United States mails to defraud."

The decisions in Wilson v. United States, 221 U. S. 361, 31 Sup. Ct. 538, 55 L. Ed. 771, and Dreier v. United States, 221 U. S. 394, 31 Sup. Ct. 550, 55 L. Ed. 784, conclusively settle the doctrine that whether a subpœna duces tecum be directed to the corporation itself, or to the custodian of the corporation's books, the unreasonable search and seizure provisions of the fourth amendment are not thereby violated, and that the constitutional privilege against testifying against himself cannot be availed of for his personal benefit by an officer of the corporation having the documents in his possession; that, while such an officer is protected against compulsory production of his private books and papers, the privilege does not extend to the books of the corporation in his possession; and that an officer of a corporation cannot withhold its books to protect the corporation, or, if he be implicated in the corporation's violation of law, to protect himself from disclosures. It will be observed that in the plea there is no distinct averment that any of the books or papers so taken upon the subpœna duces tecum were the private books or papers of the plaintiff in error. The subpœna called for no books or papers, except those of the corporations named therein. The plea alleges that "each and every" of the books and papers so taken were the private,

individual books of the plaintiff in error, and also of the corporations. It is not explained how the books could be at one and the same time his books, and also the books of the corporations. The allegation can only be construed as meaning to say that, while the books were the books of the corporations, they were the private books of the plaintiff in error in the sense that he was the president and manager of the corporations, all the stock of which was owned by himself and his wife. There is nothing in the plea to countervail the allegation there plainly made that the books were in fact the books of the several corporations named in the subpœna. It is well settled that pleas in abatement are not favored in law, that they are to be strictly construed, and that the courts will not supply omissions therefrom. In United States v. Standard Oil Co. (D. C.) 154 Fed. 728, the court said:

"Any inference indulged in by the court must be against the pleader. It is his duty to set forth in his plea, in clear, definite, and positive language, the facts relied upon. All the authorities agree that great strictness and accuracy are required in pleas in abatement, and no latitude in practice is extended to them."

See, also, United States v. Greene (D. C.) 113 Fed. 683; United States v. Jones (D. C.) 69 Fed. 973; United States v. American Tobacco Co. (D. C.) 177 Fed. 774.

[3] But, if it is conceded that the plea in the present case is to be construed as alleging that the private books and papers of the plaintiff in error were in fact used in evidence against him before the grand jury, the plea is still fatally defective, in that it goes no further than to show that evidence may have been introduced and considered by the grand jury which would be competent in itself, but which it is claimed became incompetent by reason of the circumstances under which it was obtained. The plea does not allege that there was no evidence before grand jury upon which the indictment was found other than the evidence contained in those books and papers. On the contrary, it does allege that a number of witnesses were subpœnaed before the grand jury to testify as to facts and transactions relative to the investigation into the business methods of the plaintiff in error, with a view to returning a true indictment against him, and the indictment shows by the indorsements thereon the names of 37 witnesses who were examined before the grand jury.

The court below held the plea defective in two particulars: First, in not alleging that there was no evidence before the grand jury sufficient to warrant the indictment, aside from the books and documents; and, second, in not alleging that the books had anything to do with proving the charge which resulted in the indictment, for the reason that, for aught that appeared from the plea to the contrary, the incriminating evidence found in the books or documents may have related to an entirely different crime from that for which the plaintiff in error was indicted. The court said:

"All that appears from the plea is that these books or documents were taken, and that they contained evidence tending to incriminate the defendant. Tending to incriminate the defendant of what charge? The same charge as he is indicted upon? The plea does not say so. This plea may

be entirely true, and yet these books or documents may have related entirely to a charge of some other character (such as the violation of the national banking laws), and may have contained no reference whatever to a use of the mails to defraud."

In Holt v. United States, 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, the court sustained the ruling of the court below in refusing to entertain a proffered plea in abatement and motion to quash, and said:

"All that the affidavit disclosed was that evidence in its nature competent, but made incompetent by circumstances, had been considered along with the rest. The abuses of criminal practice would be enhanced if indictments could be upset on such a ground"—citing McGregor v. United States, 134 Fed. 187, 69 C. C. A. 477; Radford v. United States, 129 Fed. 49, 63 C. C. A. 491; Chadwick v. United States, 141 Fed. 225, 72 C. C. A. 343.

In the Chadwick Case Judge Lurton said:

"This motion and affidavit is insufficient upon its face. It does not aver that the grand jury had before it no other evidence than that alleged to have been incompetent; but only that the grand jury heard and received the alleged hearsay declarations of C. T. Beckwith. We are aware of no rule of law which would nullify the action of a grand jury merely because as a part of the case they received improper or incompetent evidence. We are not prepared to say that an indictment found wholly upon illegal evidence would not be as invalid as one based upon no evidence at all; the matter not being one which may be found exclusively upon the knowledge of the grand jurors. * * * The mere fact that illegal evidence was heard, if there was any substantial competent evidence upon which that body might lawfully base their indictment and a motion and affidavit based upon an allegation that the grand jury received and considered an alleged statement, narrative, or confession which was in the nature of hearsay evidence, is not enough to justify the setting aside of an indictment, in the absence of averment or evidence that the objectionable evidence was the only evidence material to the subject."

There is no merit in the contention that the case at bar should be distinguished from the cases above cited for the reason that some of the evidence before the grand jury in the present case was used in violation of constitutional rights. The question of constitutional right under the fifth amendment was presented in the Holt Case. Upon the authority of that decision, and upon principle, it must be held that no distinction is to be made in cases where the evidence is alleged to be incompetent because constitutional rights have been invaded.

Nor do we find merit in the contention that the present case is to be distinguished from the cases above cited upon the ground that the plaintiff in error promptly objected to the introduction of the books before the grand jury. The plea in abatement recites that one of the attorneys for the plaintiff in error applied to the judge of the court below for an order commanding the officers "to forthwith return said books, documents, and papers to defendant"; that the court ordered the books, documents, and papers to be withheld temporarily from the grand jury, but that thereafter, when the matter came on for hearing, the court, after full argument, overruled the motion, and permitted said books, documents, and papers to go to the grand jury. There is no allegation as to the ground on which the motion was

made, and there is no allegation that the books, papers, and documents which were the books of the corporations named in the subpœna were represented to the court as being the individual books of the plaintiff in error, or that the court had any information from any source that the books were other than the corporations' books, or that the plaintiff in error contended that any of his private books or papers were among those which were taken upon the subpœna to be submitted to the grand jury. So far as the record goes, the first intimation to that effect was presented in the ambiguous and indefinite averments of the plea in abatement, which, as we have seen, was filed two weeks later. The case of Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, is relied upon by the plaintiff in error, but it has no bearing upon the question here involved. In that case a judgment of the court below was reversed on the ground that the court had compelled the production of private papers to be used in evidence against the accused on his trial before a jury. The plaintiff in error cites no case in which it has been held that the mere introduction before the grand jury of incompetent evidence, whether constitutional rights are invaded or not, has been held ground for abating an indictment which has been returned upon such evidence, together with other competent evidence against the accused.

[4] But it is urged that the demurrer to the plea in abatement should have been overruled for the reason that the plea set forth facts which showed an unwarranted seizure of the papers of the plaintiff in error, and that he was compelled to produce evidence against himself. The allegations of the plea are in substance that Manning, who was temporarily in charge of the office of the plaintiff in error, did not voluntarily deliver the books and papers, but that they were forcibly and wrongfully taken from the office, and that the court thereafter refused to interfere with the possession of the papers and books or their use before the grand jury. But it does not appear that the plaintiff in error was compelled to produce the books and papers. It is clear that under the authority of the decision in Adams v. New York, 192 U. S. 595, 24 Sup. Ct. 372, 48 L. Ed. 575, in view of the facts alleged, the evidence so submitted to the grand jury was not rendered inadmissible. In that case, as stated by the court:

"The question was not made in the attempt to resist an unlawful seizure of the private papers of the plaintiff in error, but arose upon objection to the introduction of testimony clearly competent as tending to establish the guilt of the accused of the offense charged. In such cases the weight of authority as well as reason limits the inquiry to the competency of the proffered testimony, and the courts do not stop to inquire as to the means by which the evidence was obtained."

The court quoted the rule laid down in 1 Greenleaf, § 254a, as follows:

"It may be mentioned in this place that, though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question."

The court further quoted from the opinion in Commonwealth v. Dana, 2 Metc. (Mass.) 329, the language of Mr. Justice Wilde, in which he said:

. "If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence, the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question."

[5] That certain of the books were the individual property of the plaintiff in error. was first definitely stated ·in one of the affidavits which was filed in support of the motion to quash. It is there stated that of the numerous books used before the grand jury there belonged to the plaintiff in error two block books, two contract ledgers, and one contract ledger and block book. As error is assigned to the ruling of the court below in overruling the motion to quash, in view of the fact that these individual books were among those which were submitted to the jury, it is important to consider the nature of the charges which were set forth in the indictment. They were that the plaintiff in error used the mails in a scheme to defraud, which, in substance, is thus described: That the plaintiff in error acquired in his own name and in the name of the various corporations specified vacant, unimproved lands remote from cities or towns, difficult of access, and of little value, platted the same into town sites, advertised them widely in newspapers and circulars which he distributed through the mails, with a view to attracting as purchasers persons who were unacquainted with the value of the lands and inexperienced in real estate transactions and without knowledge of the localities where the lands were situated, and that he fraudulently pretended and represented to such persons that he intended to build and cause to be built great seaport and manufacturing cities on said lands; that various railroad companies named intended to build their railway lines to such lands, and to purchase portions thereof for railway terminals and other railway purposes, and to build large seaport and manufacturing cities thereon, and that he intended to build steam and electric railways to said town sites, connecting them with the cities on Puget Sound, and to build manufacturing plants and factories of divers kinds thereon; that steam and electric railways were in process of construction, and nearly completed, to said town sites, and that some manufacturing plants and factories were in operation and others in process of construction thereon, and that said lands had great value for agricultural and horticultural purposes, and that some of them were of great value because they were well improved with buildings, and well supplied with stock, poultry, etc., whereas the truth was, as he well knew, that he did not intend to build or cause to be built seaport or manufacturing cities on said lands; that no railway company intended to build its line to said lands, or intended to purchase any thereof, or to build cities thereon; that he did not intend to build steam or electric railroads to said town sites, or factories or manufacturing plants thereon; that no steam or electric railroads were in

process of construction to said lands, and said lands were not sought by any persons or companies for right of way, and that no manufacturing plants or factories were in operation thereon or in process of construction; in short, the indictment denied the truth of all said representations concerning the lands. The indictment charged that many other representations of a similar nature were made in regard to the lands set forth in the indictment, all of which were alleged to be false, and well known to be false by the plaintiff in error. The indictment further set forth a scheme to advertise for sale at very low prices imaginary improved ranches, well stocked with poultry, cattle, and other domestic animals and fowl, which purported to be offered for sale by the owners of said ranches who were desirous of selling the same immediately to any person who might answer the advertisement, the purpose of which was to induce persons to meet the plaintiff in error and his agents, and thereby be induced by them to purchase the vacant and unimproved lands of the plaintiff in error and his corporations at prices greatly in excess of their true value, and that the plaintiff in error well knew that there were no such ranches for sale, and that no persons were offering the same for sale, and that the advertisements were fictitious. Many other fictitious devices of a similar nature were set forth in the indictment. It is not apparent how the block books, the contract ledgers, and the contract ledger and block book of the plaintiff in error would have tended to prove those allegations or to incriminate the plaintiff in error. In overruling the motion to quash, the court below may properly have reached that conclusion. The motion was heard upon affidavits offered in support of the same, and counter affidavits of the officers who made the service of the subpœna, who deposed in effect that, upon making the service, Manning stated to them that he had possession of the books called for, but that he did not have possession of the contracts called for; that he began separating the books and making a pile of those called for; that he stated that he did not intend to resist the order, but that it would be impossible for him to reach Tacoma before the court adjourned for the day; that he suggested that the officers take the books over, and that he would come over the following morning; that his suggestion was assented to, and that the officers proceeded to get boxes, in which they placed the books and papers, and that they took them to Tacoma, and that Manning appeared on the following morning and brought with him certain block books and ledgers which were called for by the subpœna, but which he had not delivered to the officers.

[6] The motion to quash is ordinarily addressed to the sound discretion of the trial court. Durland v. United States, 161 U. S. 306, 314, 16 Sup. Ct. 508, 40 L. Ed. 709; Logan v. United States, 144 U. S. 263, 282, 12 Sup. Ct. 617, 36 L. Ed. 429; United States v. Rosenburgh, 7 Wall. 580, 19 L. Ed. 263; Endleman v. United States, 86 Fed. 456, 30 C. C. A. 186. In Radford v. United States, supra, a decision which was approved in Holt v. United States, 218 U. S 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, the court said:

"The motion to quash was clearly determinable as a matter of discretion. It was preliminary in its character, and the denial of the motion could not

finally decide any right of the defendant. The rule laid down by the elementary writers is that a motion to quash is directed to the sound discretion of the court, and, if refused, is not a proper subject of exception."

In McGregor v. United States, supra, also approved in the Holt Case, the court said:

"It is doubtless true that grand juries frequently consider testimony that would be held inadmissible by a trial court, for such juries are not usually well informed concerning the rules of evidence nor the rights and privileges of the parties whose alleged offenses they are examining into. Such incompetent evidence, if subsequently offered at the trial, would be excluded, or, if admitted, would by an appellate court be held to be error, and any judgment found thereon would be reversed. In cases like this, where the record discloses that many witnesses were examined and much documentary evidence considered by the grand jury, it is quite apparent that it would be subversive of our criminal procedure and destructive of the rules formulated to promote the due administration of justice to establish a practice under which indictments might be quashed because of the consideration by the grand jury of the improper testimony given by one witness among many, or the reading by such jury of a statement irregularly submitted to it, which may likely have had but little influence in the conclusion reached by the jury."

[7] Error is assigned to the ruling of the court below in denying the motion of the plaintiff in error for a new trial. No question is made of the general rule that the granting or denying of a motion for a new trial rests in the sound discretion of the trial court, and is not reviewable, but it is said that the court abused discretion in the present case in denying the application of the plaintiff in error to hear the motion for a new trial upon oral evidence. There can be no question that the ruling of the court was within the sound discretion vested in it, and that the court pursued the usual course in hearing the motion upon affidavits.

[8] But it is also urged that the court abused discretion in refusing to receive certain affidavits proffered in behalf of the plaintiff in error. The court, upon motion of the plaintiff in error, gave him time until March 22, 1911, in which to file affidavits in support of his motion. On that date he filed a number of affidavits. On March 25th the motion came on for hearing. At that time the plaintiff in error requested and was granted leave to file more affidavits. Those affidavits were filed, and the government in answer thereto filed certain affidavits. The court took the motion under advisement, gave notice that he would hand down a decision some time during the following week, and adjourned the hearing until April 1st. On the opening of the court at that day, and when the court was about to announce his decision on the motion, counsel for the plaintiff in error again asked leave to file affidavits. The court examined the affidavits then offered, but denied leave to file them, holding that they were merely cumulative. It is clear that there was no abuse of discretion in this. The case is not one in which the court refused to entertain the motion or to consider the evidence proffered in support thereof. As we held in Holmgren v. United States, 156 Fed. 439, 84 C. C. A. 301, the rule that the decision of the trial court in denying a motion for a new trial is not assignable as error applies as well to a motion for a new trial presented on affidavits showing matters

which occurred after the retirement of the jury to consider their verdict as to a motion for a new trial on other grounds. Kerr v. Clampitt, 95 U. S. 188, 24 L. Ed. 493; Board of Commissioners v. Keene Savings Bank, 108 Fed. 505, 47 C. C. A. 464; Illinois Cent. R. Co. v. Coughlin, 145 Fed. 37, 75 C. C. A. 262. In Holmgren v. United States, 217 U. S. 509, 30 Sup. Ct. 588, 54 L. Ed. 861, the court considered the ruling of the District Court in denying a motion for a new trial based upon affidavits which set forth the fact that the indictment which was handed to the jury when they retired to consider their verdict contained the indorsement of the conviction of the defendant on a former trial, the verdict in which had been set aside. The court held that there was no abuse of discretion in denying the motion, and remarked:

"The record contains all the testimony, and is ample to sustain conviction of the defendant without giving weight to the effect of this indorsement."

In the present case the testimony is not brought before this court, but the court below, in deciding the motion for a new trial, said:

"I have no question whatever but that no jury could ever be gotten to sit in this court which would ever acquit the defendant upon the evidence which was introduced on this trial. * * * The guilt of the defendant in my judgment was proved more convincingly than I ever observed, either during my experience on the bench or at the bar."

We find no error for which the judgment should be reversed. It is accordingly affirmed.