**MURDICK v. UNITED STATES, and five other cases.**

(Circuit Court of Appeals, Eighth Circuit. November 5, 1926.)

Nos. 7417–7422.

1. **Post office** ⚖48(6)—Indictment for knowingly having in possession articles stolen from mails need not set out particular car or sack from which they were stolen (Penal Code, § 194 [Comp. St. § 10364]).

An indictment under Penal Code, § 194 (Comp. St. § 10364), for unlawfully having in possession articles stolen from the mails with knowledge that they were so stolen, need not set out the particular mail car or package from which the articles were stolen.

2. **Indictment and information** ⚖10—Mere fact that there was incompetent evidence before grand jury does not vitiate indictment.

An indictment must be based on competent evidence, but the mere fact that there may have been improper evidence before the grand jury is not sufficient to vitiate an indictment, if there was any competent evidence on which it might be found.

3. **Indictment and information** ⚖10—Trial court not required to review evidence before grand jury.

The court on the trial is not called on to review the evidence before the grand jury, and decide whether it was sufficient to warrant the indictment, though if it affirmatively appear in some manner that there was no competent evidence before the grand jury, and that question is seasonably and properly raised, the court should take proper action thereon.

4. **Indictment and information** ⚖10—That there was no competent evidence before grand jury is ground for motion to quash.

If defendants can show that an indictment was returned against them entirely on incompetent evidence, they can present the matter by motion to quash, which is addressed to the sound discretion of the court.

5. **Indictment and information** ⚖139—Motion to quash, made at close of government's testimony which strongly indicated guilt, held properly overruled.

Overruling of what was in effect a motion to quash, on the ground that the indictment was based on incompetent evidence, not made until the government's testimony had been taken, which tended strongly to show the guilt of defendants, held within the discretion of the court.

6. **Criminal law** ⚖369(2)—Motion to require calling of witnesses who testified before grand jury is addressed to court's discretion.

Overruling a motion by defendants to require prosecution to call witnesses who testified before grand jury held discretionary.

7. **Criminal law** ⚖365(1)—Evidence of defendant's sale of particular bonds held competent in prosecution for conspiracy to deal in securities stolen from mails.

Under an indictment charging conspiracy to knowingly deal in articles stolen from the mails, and with having in possession bonds and securities described, "and other bonds" so stolen, evidence of the sale by defendants of bonds held competent, though those particular bonds were not described in the indictment.

8. **Criminal law** ⚖365(1)—Evidence of other offenses held admissible as part of res gestæ.

In a prosecution for knowingly selling bonds stolen from the mails, evidence of the sale of other stolen bonds, when inseparably connected with the transaction charged, is admissible as part of the res gestæ.

9. **Criminal law** ⚖531(3)—Testimony of confession made by defendant held properly admitted.

Admission of testimony of a confession made by a defendant held not error.

In Error to the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Criminal prosecutions by the United States against Chester Murdick, against Walter E. Barnes, against Arba Perry, against Percy A. Clarey, against Clarence O. Radcliffe, and against Arthur E. Sterner. Judgments of conviction, and defendants separately bring error. Affirmed.

Homer Morris, of Minneapolis, Minn., for plaintiffs in error Murdick, Radcliffe, and Sterner.

Robert Cowling, of Minneapolis, Minn., for plaintiffs in error Perry and Clarey.

Thomas J. Newman, of St. Paul, Minn., for plaintiff in error Barnes.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn. (William Anderson, Asst. U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

Before KENYON, Circuit Judge, and SCOTT and SANBORN, District Judges.

KENYON, Circuit Judge. Plaintiffs in error (hereafter for convenience referred to as defendants) were tried in the District Court of the United States for the District of Minnesota upon an indictment charging in the first count a violation of that portion of section 194 of the Penal Code (Comp. St. § 10364) reading as follows:

"Sec. 194. Whoever shall steal, take or abstract, or by fraud or deception obtain, from or out of any mail, post-office, or station thereof, or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or shall abstract or remove from any such letter, package, bag, or mail, any article or thing contained therein, or shall secrete, embezzle, or destroy any such letter, postal card, package, bag, or mail, or any

article or thing contained therein, or whoever shall buy, receive, or conceal, or aid in buying, receiving, or concealing, or shall unlawfully have in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been so stolen, taken, embezzled, or abstracted, * * * shall be fined not more than two thousand dollars, or imprisoned not more than five years, or both."

The second count charged a conspiracy to do the things alleged to have been unlawfully done under that part of section 194 of the Penal Code heretofore quoted. Two of the parties indicted, John M. Boland and George M. Fletcher, entered a plea of guilty.

Plaintiffs in error were convicted on both counts of the indictment and sentenced to various terms in the penitentiary. There were other parties indicted, but the indictment was nolled as to them upon motion of the United States district attorney. While separate briefs are filed for plaintiffs in error, the assignments of error are practically the same in all the cases. Likewise the arguments. We therefore deal with all the writs in one opinion.

A large quantity of bonds and securities were stolen from the United States mails in the city of Chicago in the month of January, 1921. This case arises out of the alleged disposition of some of these bonds and securities. Defendant Walter E. Barnes, who went under the name of Gill D. Sage, and who will be so referred to in this opinion, seems to have been the central figure in securing and disposing of the bonds and securities claimed to have been a part of those taken from the United States mails in the robbery referred to. John M. Boland, who entered a plea of guilty, testified for the government. It appears from his testimony that he went to Chicago in response to some word from Sage, and had a conference in the back room of a saloon or dive with Sage and a party designated as Joe Blue. Arrangements were there made for Boland to dispose of some bonds, which he was informed had been stolen from the effects of a dead man. Later Boland went to Minneapolis, met Sage and Blue there, and they turned over to him $40,000 of United States Liberty bonds. He sold them to defendant Murdick for 75 cents on the dollar. There is evidence in the record that Boland had been informed by Murdick that he was in the market for stolen bonds.

There were two other transactions appearing in the evidence as to the disposal of bonds and securities, one being bond coupons in the amount of $800, which Boland turned over to Murdick, and for which Murdick paid one-half their value; another was a consignment from Sage at Chicago, through Boland, to Perry & Co., at Minneapolis, Minn. (with which company defendant Murdick was connected in some capacity), of various miscellaneous bonds and certificates amounting to $25,000 par value. There is evidence that at about the time of the latter transaction Boland was informed by Murdick that he knew the bonds which he was handling had been stolen from the United States mails. Some bonds after this were brought by Boland to Minneapolis and sold to Murdick. The evidence also discloses that Murdick and Boland had an agreement by the terms of which neither was to inquire as to the source or disposition of the bonds.

The defendant George M. Fletcher, who pleaded guilty, testified in the case on behalf of the government and told the story of the transactions which involved defendants Clarence O. Radcliffe and Percy A. Clarey. He testified that they talked with him concerning the fact that the securities they were handling had been stolen from the United States mails. Defendant Arthur E. Sterner voluntarily signed a written confession showing his part in the matter.

[1] Demurrers were filed to the indictment on the part of certain of the defendants, on the ground that it was so indefinite as to fail to acquaint defendants with the offenses with which they were charged, and failed to show any offense had been committed. The objections urged to the indictment are not argued in this court by any of the defendants, except Murdick. A mere statement is made thereof; hence as to other defendants we assume are waived. Counsel for Murdick contends that the indictment is faulty in not stating any time or place or building or vehicle or station from which or where the robbery occurred.

The indictment is in the language of the statute, and the gist of the crime under count 1 is the unlawful having in possession articles stolen from the United States mails with knowledge that the same were so stolen. We do not understand the defendants are entitled to know from the indictment the exact mail car or the particular sack from which such articles have been stolen. The indictment here sets forth the facts alleged to constitute the offense distinctly enough to give defendants full knowledge of the charge they are called upon to meet, and so particularly, as stated by this court in Miller v. United States, 133 F. 337, 341, 66 C. C. A.

399, 403, "as to enable him to avail himself of a conviction or acquittal in defense of another prosecution for the same crime, and so clearly that the court, upon an examination of the indictment, may be able to determine whether or not, under the law, the facts there stated are sufficient to support a conviction." The indictment we are satisfied is well enough. Weisman v. United States (C. C. A.) 1 F.(2d) 696; Carpenter et al. v. United States (C. C. A.) 1 F.(2d) 314.

One of the alleged errors is the refusal of the trial court to quash the indictment on the ground that it was based on illegal and hearsay evidence. No motion to quash was made before the trial of the case. It is doubtful under the record if any such motion was made at all; the question arising on the motion of counsel for one of the defendants to strike from the record the testimony of the witness George M. Fletcher. This was made near the close of the trial and denied by the court.

The circumstances leading up to this were as follows: Only two witnesses, Robert B. Mondelle and Ralph M. Hugdal, appeared before the grand jury. Both were postal inspectors. Neither testified at the trial. It was claimed by counsel for defendants that it appeared in the case, at the time the motion was made to strike the testimony of witness Fletcher, that these two witnesses before the grand jury could have known nothing of the alleged theft from the mails of the bonds and securities described in the indictment, except through hearsay testimony. The court seems to have accepted the action as a motion to quash the indictment. For the purpose, therefore, of this opinion, we treat the matter as if a motion had been filed near the close of the case to quash the indictment on the ground that there was no competent testimony before the grand jury upon which to base it.

[2, 3] At the close of the government's case, counsel for defendants requested of the court that the two witnesses who had appeared before the grand jury should be called to permit cross-examination to determine whether there was competent testimony before the grand jury on which to base an indictment. In other words, that the court should review the evidence before the grand jury. This request was denied by the court, and this also is assigned as error. It goes without argument that an indictment must be based on competent evidence. Parties should not be indicted on mere hearsay or other incompetent evidence, but the mere fact that there may have been improper evidence before a grand jury is not sufficient to vitiate an indictment if there was any competent evidence upon which such indictment might be found. The court is not called on to review the evidence before the grand jury and decide whether it was sufficient to warrant an indictment. If it affirmatively appear in some manner that there was no competent evidence before the grand jury on which to base an indictment, and that question is seasonably and properly raised, the court should, of course, take proper action thereon.

In Anderson et al. v. United States (C. C. A.) 273 F. 20, 29, this court said: "We understand the rule to be that an indictment cannot be set aside or avoided on such an objection unless it affirmatively appear that there was no evidence of the commission of the offenses presented to the grand jury, or unless all of the evidence which it heard on the inquiry was unlawfully procured, in violation of some fundamental right of the party indicted, and which would be barred on the trial as incompetent and inadmissible against him."

It seems to us this court has settled the question in the majority opinion in McKinney v. United States, 199 F. 25, 28, 117 C. C. A. 403, 406, where it considered the various cases involving the propriety of a trial court going behind an indictment and inquiring as to the character of the evidence before the grand jury. It there said: "Matters affecting the state or integrity of a grand jury as an inquiring and accusing instrumentality, such as the number and qualifications of its members, are proper subjects of investigation; but to go further, and hold that its internal proceedings must, whenever challenged, undergo a judicial scrutiny and test according to the rules of trial evidence, is but to place another needless, impeding obstacle in the course of criminal procedure." The vigorous dissent in this case by Judge Sanborn shows there are two sides to the question and authority both ways.

In Holt v. United States, 218 U. S. 245, 247, 248, 31 S. Ct. 2, 4 (54 L. Ed. 1021, 20 Ann. Cas. 1138): "Without considering how far, if at all, the court is warranted in inquiring into the nature of the evidence on which a grand jury has acted, and how far, in case of such an inquiry, the discretion of the trial court is subject to review (United States v. Rosenburgh, 7 Wall. 580 [19 L. Ed. 263]), it is enough to say that there is no reason for reviewing it here. All that the affidavit disclosed was that evidence in its nature competent, but made incompetent by

circumstances, had been considered along with the rest. The abuses of criminal practice would be enhanced if indictments could be upset on such a ground." See, also, McGregor v. United States, 134 F. 187, 69 C. C. A. 477; Chadwick v. United States, 141 F. 225, 72 C. C. A. 343; United States v. Perlman (D. C.) 247 F. 158.

[4] There is inherent power in the court to prevent abuse in grand jury proceedings. There is no divinity surrounding its action, and the court has the right to go behind the secrecy imposed upon a grand jury as to its proceedings, where the interests of justice demand it; but if the court is of necessity compelled to review the evidence before the grand jury, weigh the same as to whether it is sufficient to warrant returning an indictment, sift the competent from the incompetent to determine its effect upon the minds of the jurors, then a new abuse of criminal practice will become prevalent in the courts absolutely subversive of criminal procedure. If defendants can show that an indictment was returned against them entirely on incompetent evidence, they can present the matter by motion to quash, and the general holdings are that such motion is addressed to the sound discretion of the court. Logan v. United States, 144 U. S. 263, 12 S. Ct. 617, 36 L. Ed. 429; Durland v. United States, 161 U. S. 306, 16 S. Ct. 508, 40 L. Ed. 709; Hillman v. United States, 192 F. 264, 112 C. C. A. 522. Whatever may be the rule of law as to the court inquiring into grand jury proceedings, it is evident that in this record there is nothing to show that the indictment was based entirely on incompetent evidence. The two witnesses before the grand jury were postal inspectors who had been investigating the alleged crime. What they testified to before the grand jury we do not know. The record shows that most of defendants, if not all, at various times made statements admitting their knowledge that the bonds and securities were stolen from the mails. Some of these were made to the postal inspector.

[5] The trial court, in discussing this matter, following argument of counsel thereon, said: "Just what the two witnesses Hugdal and Mundelle have been able to testify to may not be entirely clear. It is reasonably clear that they could not testify to the mailing of the letters, but I suppose they could have testified to the defendants having confessed or admitted, each of them, that these packages were stolen from the mail. It may be urged against this view that the defendants themselves did not know that

fact; but, on the other hand, it is hardly necessary to prove matter which they admit to be true. At any rate, there is some force in the suggestion that these two witnesses, Mundelle and Hugdal, may very well have testified to admissions on the part of each defendant, going the full length of the charges which are made against them. We must, of course, keep in mind that the work of a grand jury is a preliminary work. The instrument which comes from their hands is merely a charging instrument. In the nature of things, that which on the trial of an action we would consider as irregularities will from time to time take place before the grand jury and cannot be avoided from the nature of that body. While no citizen should be held to respond to an indictment which is not at least fairly well founded, the idea back of that is that he should not be put to the trouble and to the annoyance and to the expense of meeting and responding to such an instrument. Here we have gone on with the trial and the extent to which the indictment is justified appears from the evidence taken. Then, too, as has been suggested, these defendants cannot be tried again, and I suppose, if the matter is left to the discretion of the court at all, that is a matter which ought to weigh somewhat in its mind, because, while we are to see to it that the defendants, and the government, as well, shall have a fair trial, we ought not, if it can conveniently be avoided, come to the conclusion that as a result of it all, no trial on the merits shall be had at all—that should be avoided—we should, if possible, get to a trial on the merits. I think the motion to quash should be denied, and that we go on with the trial on its merits." This seems to express the matter very clearly and in line with the rule laid down by this court in McKinney v. United States, supra.

[6] Nor was the government required to call the witnesses who were before the grand jury. Defendants could have done so. At the time this request of defendants so to do in the present case was made the government had practically concluded its evidence, which tended strongly to show the guilt of all defendants. The government's counsel had the right to try the case in their own way. The government should have no desire to convict innocent men or to conduct any trial of men charged with crime in a way to prejudice their rights. Some things in the trial of cases must be left to the discretion of the trial judge. This is such an instance. We think in the court's refusal requiring the government to call the witnesses, in the refusal to

strike the evidence of Fletcher, in denying the motion (assuming that such motion was made) to quash the indictment at the time of the motion to strike Fletcher's evidence, there was no abuse of the court's discretion.

[7] Another alleged error is the action of the trial court in admitting certain testimony relative to the $40,000 Liberty bond transaction, it being claimed that the bonds involved in that transaction were not described in the indictment; that it did not appear they were stolen from the mails; that the evidence was prejudicial and that the court did not clearly limit the effect thereof in his instructions to the jury. The indictment does not describe these particular bonds, but after describing certain bonds refers to "other bonds," in the possession of defendants stolen from the mails. Defendants could have secured a bill of particulars of these bonds if they had desired. We are satisfied that under the allegation of the indictment as to "other bonds" the testimony as to these bonds was perfectly competent. In any event, here was a criminal action for conspiracy in dealing in bonds and securities stolen from the United States mails. The transaction as to these bonds was interwoven with the entire transaction charged in the indictment, and was part of the general history thereof. It seems to us also that the testimony as to these Liberty bonds related to a matter that was part of the res gestæ.

This court had occasion to consider a somewhat similar question in McCormick v. United States (C. C. A.) 9 F.(2d) 237, 238, in which it said: "It is next urged that the court erred in admitting evidence concerning money stolen from the Denver mint and bonds stolen from a bank, the larceny in each case not having been from the mails, and therefore not within the offense charged. This evidence was introduced incidentally in the testimony of witnesses as part of the res gestæ and as disclosing the history of the alleged crime. It was competent as bearing upon the participation of the various defendants, and was admissible as tending to prove intent and knowledge as well as the existence of a conspiracy. * * * This testimony respecting the currency stolen from the Denver mint and the bonds stolen from the bank was so inseparably interwoven with the transactions complained of and charged in the indictment that its admission clearly constituted no error."

[8] Even were this a distinct offense from that charged in the indictment, it is so inseparably connected that its proof is part of the proof of the other transactions, and the evidence was admissible on this ground. Astwood v. United States (C. C. A.) 1 F.(2d) 639.

[9] Another alleged error is the admission of the testimony of Inspector Jackson of an alleged confession made by defendant Sage, October 23, 1923, while he was in the Nebraska state penitentiary. When this confession was taken Mr. Francis B. Robinson, Sage's attorney, was present. When the confession was offered Jackson testified that no promises or threats or inducements of any kind were made to Sage. Of course, it is hornbook law that an alleged confession by an accused person must be voluntary and not obtained by compulsion, or fear induced by threats, or obtained by any other kind of inducement.

It is apparent from this record that when the confession was sought to be introduced every opportunity was given by the court to defendants' counsel to ascertain whether the confession was a voluntary one. The district attorney offered to permit defendants' counsel to examine Mr. Jackson on the matter. One of the counsel for defendants went over the confession and objected to certain parts thereof. These were stricken out and not read to the jury, and no objection was made by any of the counsel for defendants to the reading of that part of the confession to the jury which remained after the portions objected to had been stricken therefrom. Nor was any objection made thereto up to the last day of the trial, when a motion was made to strike it from the record.

The court also permitted or required at the request of counsel for defendants the attendance of Mr. Robinson, who appeared on the last day of the trial and testified that, while no inducements had been held out to Sage to make the confession, and no threats indulged in, the inspector had told him it would not be used against him. The court, in commenting on the motion then made to strike the testimony relating to the confession from the record, while not apparently directly ruling thereon, indicated that in his judgment the question of whether the confession was voluntary or not, in view of the contradictory testimony of the inspector, Mr. Jackson, and Sage's attorney, Mr. Robinson, was for the jury. Later, however, and during the argument of the case to the jury on the part of one of defendants' counsel, the court of its own motion entered an order striking this evidence from the record, and instructed and cautioned the jury that it

should not be considered by them. There could be no claim made of error as to the introduction of the portions of the confession unobjected to. When it did appear, near the close of the case, that there was any question concerning the confession being a voluntary one the court on its own motion struck the entire matter from the record. Certainly the court was exercising an abundance of caution to protect the rights of defendant, Sage, and his codefendants. Of course, this matter before the jury for so many days had some effect and probably worked some prejudice. It is difficult for juries to set aside impressions made by a matter of this kind, even though they may attempt under the instructions of the court so to do. There was no error in admitting the deleted confession. If it was error not to have stricken it upon motion made after Robinson's testimony, then no increased prejudice could have resulted by it remaining with the jury an additional day or two, when the court did strike it from the record. We think defendants' rights were amply protected by the court in regard to the confession of Sage.

It is argued by the different counsel for various of the defendants in their briefs that the evidence was not sufficient to justify the verdicts of guilty. At the close of the government's case, motions for instructed verdicts on the ground that the evidence was not sufficient to sustain a verdict were made as to defendants Perry, Sterner, and Radcliffe. No motion seems to have been made as to Barnes or Clarey. Motion was made as to defendant Murdick at the close of all the evidence (except Robinson's) to instruct a verdict on the ground of the insufficiency of the evidence. We have read and reviewed the voluminous evidence presented in these cases. There is no doubt in our minds as to the sufficiency of the evidence to justify the conviction of all the defendants on both counts of the indictment. The case is remarkably free from error, and that part of section 269, Judicial Code, as amended by Act Feb. 26, 1919 (Comp. St. § 1246), reading as follows: "On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties"—may well be applied to the writs of error here.

The judgment of the trial court as to each of the defendants is affirmed.