## RADFORD v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.   March 8, 1904.)

No. 55.

1. FEDERAL COURTS—APPEAL—RECORD—REDUCTION.

On an appeal to the Circuit Court of Appeals, where there is no question raised as to the credibility of any witness, or as to the weight of his testimony, and it is not important that the court should know just how the testimony was given, the testimony should not be printed in question and answer in the appeal record, but should be presented in narrative form.

2. CRIMINAL LAW—INDICTMENT—MOTION TO QUASH—EVIDENCE BEFORE GRAND JURY.

The denial of a motion to quash an indictment, on the ground that it was based on incompetent evidence of essential facts before the grand jury is a matter of discretion, and is not a proper subject of exception.

5. SAME—AFFIDAVITS.

The affidavit in support of a motion to quash an indictment on the ground that it was founded on incompetent testimony was to the effect that no other or different evidence than that given by deponent, which was objected to, was produced, or taken before the grand jury, pertaining to the question in issue, and that deponent was present "in and about the grand jury during the entire session thereof," was insufficient to show that no other testimony was introduced.

4. SAME—JURORS—ORDER OF CHALLENGE—OBJECTIONS—WAIVER.

Where, in a criminal prosecution in the federal courts, there was a dispute between counsel, while the jury was being impaneled, as to the order in which their respective peremptory challenges should be used, but neither counsel called the court's attention to it, and the United States attorney reserved one of his challenges until after talesmen had been drawn, it was not error to permit the government's attorney to exercise such challenge after defendant's challenges had been exhausted.

5. STATE STATUTES—APPLICATION.

Code Cr. Proc. N. Y. § 385, providing the order in which jurors drawn for the trial of criminal cases shall be challenged, is not binding on the federal courts sitting in that state for the trial of criminal cases.

6. SAME—CONSPIRACY—EVIDENCE—OBJECTIONS.

Where, in a prosecution for conspiracy, the court held that certain evidence introduced was admissible as against one of the conspirators only, and called the government attorney's attention explicitly to the fact that it was inadmissible as against the others, the admission of such evidence was not subject to exception on the part of the other defendants.

7. SAME.

In a prosecution for conspiracy to defraud the United States by the execution of straw bail, the introduction of affidavits of justification could not be objected to under Rev. St. § 860 [U. S. Comp. St. 1901, p. 661], prohibiting the introduction of evidence obtained from a party or witness by means of a judicial proceeding, by any of the conspirators except those who made the affidavits.

8. SAME—ELEMENTS OF OFFENSE—LOSS.

In a prosecution for conspiracy to defraud the United States by the execution of straw bail, it was not necessary that the government should prove that the accused did not appear on the day required, since the government was defrauded when the accused were released on the strength of a recognizance, apparently good, but worthless in fact.

¶ 5. See Courts, vol. 13, Cent. Dig. § 908.

129 F.—4

In Error to the District Court of the United States for the Western District of New York.

This cause comes here upon a writ of error to review a judgment of the District Court, Western District of New York, convicting plaintiff in error of a violation of section 5440, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3676], which reads as follows: "5440. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than one thousand dollars and not more than ten thousand dollars, and to imprisonment not more than two years." The two indictments, which were duly consolidated by order of the court and tried together, charged four persons—Radford, Parrish, McLaren, and James—with entering into an unlawful agreement and combination and conspiring together to defraud the United States. The details of the conspiracy were as follows: Two Chinamen—Moy Dong Gin and Aye Yub—were under arrest charged with having unlawfully entered the United States, and were each held for trial before a United States commissioner. It was charged that the defendants agreed together that adjournments should be asked for and application made to admit to bail, and that upon the fixing of the bail Parrish and James should offer themselves as sureties. All four of them knew that the proposed sureties were not worth anything above just debts and liabilities, and therefore, in order to enable them ostensibly to justify by specifying and describing property as their own, it was agreed that Radford should convey to James and McLaren should convey to Parrish certain pieces of real estate specifically set forth in the indictment, which property was so conveyed for no other purpose than to be referred to in the sureties' justification. It was further charged that the properties so conveyed were not worth any sum above the amount of the incumbrances thereon, that this was well known to all of the accused, and that the whole scheme was one to defraud the United States by securing the release of the Chinamen upon recognizances apparently good, but in reality worthless, so that upon the failure of the Chinamen to appear for trial the government would be defrauded of the amount of the recognizances. The acts charged to have been done in furtherance of the conspiracy were the conveyance by Radford to James of three lots on St. Lawrence avenue, Buffalo, and three lots on Stone street, Tonawanda, and by McLaren to Parrish of a lot on Crowley avenue, Buffalo; also the giving of recognizances by James and Parrish, with affidavits of justification referring to the pieces of property so conveyed. The bail was accepted by the commissioners, and the Chinamen released. The latter failed to appear for trial, and the recognizances were duly estreated. The four accused persons were tried together. The jury found Radford and Parrish guilty, and acquitted McLaren and James.

C. A. Dolson, for plaintiff in error.
Chas. H. Brown, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). Before entering upon a discussion of the points raised by assignment of errors and here argued, we must call attention to the character of the record presented to this court. It consists of 580 printed pages and a supplement of 96 pages in typewriting containing exhibits. The appeal is by Radford only, and there was no motion to direct acquittal as to him, or, indeed, as to any of the others. In view of the issues involved, the testimony is most voluminous, and it has been presented to us without the slightest effort to assist the court by concentrating its attention to the parts material to the assignments of error. Apparently it was thought that the only labor required of counsel was to fasten together the stenographer's min-

utes and the exhibits, and have them certified by the clerk of the District Court. In a note at the end of this opinion will be found a fair illustration of the result of such practice. Had this wearisome succession of question and answer been presented in narrative form, it is altogether probable that the record would have shrunk to a quarter, at least, of its present size, and this court have been spared the labor of winnowing wheat from chaff. Of course, there are many occasions when it is quite important to know just how the testimony was given, what hesitation there may have been on the part of a witness, what contradictions, how much of his answer was suggested by a question, so that there may be proper appreciation of the weight to be given to his testimony. But on this appeal there is no question raised as to the credibility of any witness or as to the weight of his testimony. Concededly, at the close of the case, all such questions were to be left to the jury, and they were so left. Counsel should appreciate that, although their first duty is to their client to see to it that everything material to that client's case, however trivial, is laid before the reviewing court, they also, as members of the bar practicing before that court, owe it a duty. We need not expatiate further on this point. It is thought—as it is hoped—that those who read the footnote and these criticisms will hereafter be more careful to discharge their full duty as counselors of this court.

Of the 25 errors assigned a few only have been presented in argument. These only need be discussed here. It is assigned as error that the court denied a motion to quash the indictments, which was based on the proposition that the grand jury acted upon incompetent evidence of the essential facts on which the charge was predicated, it appearing that a clerk in the office of the county clerk of Erie county (whose office is in Buffalo) attended before the grand jury in Lockport, and testified that upon a search of the records made by him he found certain deeds, mortgages, and judgments on file. It would be a sufficient answer to this assignment to call attention to the well-settled rule that such a motion is ordinarily addressed to the discretion of the trial court. The reason for entertaining motions to quash on grounds such as that above indicated is well set out in U. S. v. Farrington (D. C.) 5 Fed. 343:

"No person should be subjected to the expense, vexation, and contumely of a trial for a criminal offense unless the charge has been investigated, and a reasonable foundation laid for an indictment or information."

After conviction this reason no longer exists, because an intelligent and impartial jury of his peers, after a careful investigation, at which he has been represented by counsel, with full power to cross-examine, to introduce evidence, to tell his own story if he so choose, and to plead his cause, has reached the conclusion not only that there was a reasonable foundation for the charge, but that the charge was true. "The motion to quash was clearly determinable as a matter of discretion. It was preliminary in its character, and the denial of the motion could not finally decide any right of the defendant. The rule laid down by the elementary writers is that a motion to quash is directed to the sound discretion of the court,

and, if refused, is not a proper subject of exception." U. S. v. Rosenberg, 7 Wall. 580, 19 L. Ed. 263. But, if this were not so, the motion to quash would be held to be wholly without merit. By reason of the circumstance that the one affidavit on which it was made was among the typewritten exhibits, it did not come to our attention on the argument, and for the future guidance of counsel in other causes it should now be referred to. The clerk from the county clerk's office, after setting forth what he testified to as to the records he had found on file, avers that no record or document from that office was taken to the grand jury, and that none were exhibited to him when he gave his testimony. The remaining portion of his affidavit is as follows:

"That no other or different testimony or evidence [than his own] was produced or taken before said grand jury pertaining to the deeds, mortgages, or judgments appearing in the name of or against the said Ernest L. Parrish, as deponent verily believes; and the reason for his belief is that deponent was the only person from the said Erie county clerk's office before said grand jury; that deponent was present in and about the grand jury during the entire session of the said grand jury at the city of Lockport, as aforesaid; that deponent saw no books, records, or documents from said Erie county clerk's office before said grand jury at Lockport."

The expression, "present in the grand jury during the entire session," is of dubious meaning, but, if it stood alone, it might be construed as averring that he was in the grand jury room from the beginning to the end of every one of their meetings when this case was considered. But the affiant manifestly makes no such claim. He swears only that he "was present in and about the grand jury." How a person who is "about" a grand jury thereby becomes qualified to state everything which that body did and did not do is not apparent. How does he know that the grand jury did not have before them duly authenticated copies of every deed, mortgage, and judgment to which he testified? How does he know what other evidence they may have had of the transactions on which the charge was based? The belief of a person "present about a grand jury" is unimportant, and his assertion as to what took place in the grand jury room (except when he happened to be in it) is devoid of all weight. A motion to quash the indictments on such an affidavit as the one found among the exhibits was preposterous, and the effort to review the ruling of the trial judge thereon is frivolous.

Error is assigned in that the court permitted the United States attorney to excuse a particular juryman against objection. The record is not quite clear as to what occurred. It appears that after examinations on the voir dire, and the exercise of all defendants' peremptory challenges, there were less than 12 men in the box, and the panel was exhausted. Talesmen were summoned and examined, the box was filled, and defendants' counsel announced that they were content with the jury. There is nothing to show that the government had made a like announcement. Thereupon the United States attorney proceeded to ask some questions of one of the jurymen. Whether or not he was one of those who entered the box after defendants had exhausted their challenges does not appear. Objection was made that the prosecuting officer was "bound to exhaust

his objections before the defendant takes up the objections." There seems to have been some dispute between counsel while the jury were being impaneled as to the order in which their respective peremptory ·challenges should be used, but neither of them called the court's attention to it. Upon hearing the objection above quoted, the court remarked that, if counsel had asked for a ruling, it would have made one; but that, not having done so, the challenge to the juror would be allowed. We see no error in this. Counsel apparently relies on section 385 of the New York Code of Criminal Procedure, which provides that "challenges to an individual juror must be taken first by the people and then by the defendant." Apparently this statute contemplates that when the box is filled with 12 men, who have successfully passed examination on the voir dire, they shall be taken up one by one in regular order, and as to each one so taken up the prosecutor first shall be required to state whether he challenges or not, and, if he do not challenge that juror, then the defendant shall be required to state whether or not he challenges him. If either challenge, and the vacant seat be filled by another juror, then the same order of propounding challenges to him should be observed; and the challenging should proceed in like order till the number of peremptory challenges allowed are exhausted, or both sides are on record as having specifically declined to challenge every one of the twelve in the box. This seems to be an excellent method of presenting the challenges, and would no doubt tend in practice to expedite the selection of a jury by cutting off some of the· finessing with which that operation is so often obstructed. But, though it may quite appropriately be followed in the federal courts, the state statute does not lay down the rule for those tribunals in criminal trials (Logan v. U. S., 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429), and there is no error assignable if the trial judge fails to conform to state practice. As has been already indicated, there was no error in the disposition of the case at bar. Certainly upon no reasonable theory could either side have been compelled to exhaust its challenges until there were 12 men in the box to select from; and, if either side chose to exhaust its allowance without first making some request of the court as to regulating the order of challenge, it cannot complain if the other side has more prudently reserved one or more of its challenges to meet the selections from a new panel of talesmen, of whose names no one was advised until after the trial had begun, and as to whose antecedents, therefore, there has been no opportunity for inquiry.

It is next assigned as error that the court admitted in evidence "the deeds to the Virginia property." The defendant Parrish, in his affidavit of justification, stated that, in addition to the Crowley avenue property, he owned 542 acres of land in Virginia, free and clear of incumbrances. It was sought to be proved that this land had been conveyed to him by Radford, and that title had been divested by certain tax sales. Objection was made to the tax deeds because it was not shown that the preliminary steps to a tax sale had been taken. It will be unnecessary to examine any of these objections. The record shows that the government called a deputy

clerk of the Virginia court, and asked him some question about the title. Thereupon objection was taken, and the court ruled that the evidence would be received on the question of intent against Radford and Parrish. Before the question was answered, a further objection was raised that the witness was incompetent, and he was withdrawn, the United States attorney stating that he would show the state of affairs otherwise, and he offered a deed. Before the deed was received, defendants' counsel said: "If the court please, you announced this evidence would be received as to Radford. I think your honor should receive it as to Parrish only." To which the court replied, "Yes, I will recall that. Correct my ruling in that regard;" and thereupon three deeds covering the Virginia property were received, the court again stating, as the third was presented, that the evidence was received as tending to show that Parrish had no title in the property, and as to characterizing his intent and guilty knowledge. And as the last of the Virginia deeds—the fourth one— was marked in evidence the court said: "Of course, you understand, Mr. District Attorney, that this proof is offered solely as against Mr. Parrish, and not as against any of the other alleged conspirators," to which the District Attorney replied that he certainly so understood it. Under these circumstances the plaintiff in error Radford cannot complain of the admission of this evidence. If, when the case went to the jury, he had any apprehension that the jury might forget that the evidence was received only against Parrish, he should have asked to have them further instructed to disregard it as against himself. This he did not do.

Exception was reserved to the admission in evidence of the affidavits of justification—i. e., ownership of property—which defendants Parrish and James submitted with the recognizances they signed on the ground that such affidavits were "evidence obtained from a party or witness by means of a judicial proceeding," and as such within the provisions of section 860, Rev. St. U. S. [U. S. Comp. St. 1901, p. 661]. Such voluntary affidavits are apparently not within the section, but, if they were, the only persons who could invoke its provisions were those who had made the affidavits—Parrish and James. The plaintiff in error Radford could not properly object to their introduction against him.

The sole remaining assignment of error which has been argued is to a refusal to charge the following proposition:

"It is absolutely necessary to establish under this indictment that the defendants agreed that the Chinamen should not appear upon the adjourned day, because, if they did appear, no loss could occur upon the bond, and it would be an agreement, by the result of which the United States could not possibly have a loss. It must therefore be affirmatively proven as one of the essential elements of the crime charged that the defendants, and each of them, knew beforehand, and when they made the agreement, that these Chinese would not appear upon the adjourned day. A loss must occur, or at least there must be an agreement that could be effectuated."

The exception to the refusal so to charge was unsound. The United States were defrauded when the release of the Chinamen was obtained on the strength of a recognizance, apparently good, but in reality worthless. It was not necessary to go further, and

show that the defendants conspired to remove the Chinamen from the jurisdiction of the commissioner. The jury, from the proof, was entirely warranted in finding that it was the expectation of the conspirators that the persons who were left foot-loose when the bail bonds were accepted would avail themselves of the opportunity to decamp. The gist of the offense under section 5440 is the conspiracy to defraud, coupled with a single overt act. Whether or not the conspiracy is successful is wholly immaterial.

The judgment is affirmed.

### NOTE.

### Excerpts from Record.

Cross-examination of a witness for the prosecution, who had testified that he had bought a piece of property in Tonawanda, for the consideration of some watches given to the vendor: "Q. Was it more than one watch? A. I believe so, yes. Q. Are you sure? A. No. Q. Silver watch, was it? A. No. Q. Sure? A. Yes. Q. It must have been brass, then? A. No. Q. What? A. Not necessarily. Q. Copper one? A. No. Q. Do you know what the watch was worth? A. I couldn't tell you now. Q. Will you swear it was worth $10? A. Yes. Q. $12? A. Yes. Q. $15. A. Yes. Q. $20? A. Yes. Q. How much? A. I couldn't tell you the exact amount, as I said. Q. Could you tell me within $10? A. I don't think so. Q. Could you tell me within $20? A. Probably not. * * * Q. Have you ever acted as straw man for anybody? A. Never. Q. Isn't that part of your business? A. Part of my business? Q. Generally? A. Indeed, not. Q. Don't laugh at it. Just answer my question. A. Indeed not. Q. Do you know Samuel H. Cowles? A. I do not. Q. Did you ever see him? A. Not to my knowledge. Q. Do you know Harry Cowles? A. Harry Cowles? I do not. Q. Do you know Walter Cowles? A. I know W. C. Cowles. Q. Well, Walter C. Cowles, do you know him? A. Yes, sir. Q. Did you take the property as straw man for Walter? A. I did not. Q. As his agent? A. I did not. Q. Did you have any interest in the property —real interest? A. I did. Q. Ever have? A. I did. * * * Q. What is your business now? A. Gem expert. Q. What? A. Gem expert. Q. Working for any special firm, or generally on your own hook? A. Work for a firm in New York City. Q. What firm? A. J. Dreiser & Son. Q. What is the name? A. J. Dreiser & Son. Q. What is the address? A. 292 5th avenue. Q. How long have you been at work for them? A. 5 years and a half. Q. As gem expert? A. I have. Q. For that length of time? A. For that length of time. Q. Where do you live in New York? A. 31 W. 82d street. Q. Married man? A. Yes. Q. How long have you lived there? A. About a year. Q. Where did you live before that? A. 1254 Lexington avenue. Q. Keep house there? A. Yes. Q. How long did you live there? A. About 8 months. Q. Where did you live before that? A. 201 W. 106th street. Q. Did you keep house there? A. Yes, sir. Q. How long did you live there? A. A year. Q. Where did you live before that? A. I don't believe I can give you the number. Q. Well, give me the street. A. 25th street. Q. How long did you live there? A. I should say about a year. Q. Can you be any more definite than that? A. No. Q. Where did you live before that? A. Several different places where we boarded. Didn't keep house before that. Q. Well, you have been in New York only since '97. How many places have you boarded at since you have been there, before you commenced to keep house? A. Perhaps three. Q. Or more? A. I don't think so. Q. How long did you stay in each place? A. I couldn't tell you exactly; several months, perhaps. Q. And perhaps not? A. Longer in some; shorter in others. * * * Q. Did you ever pay any taxes on the property? A. Never did. Q. Did you ever receive any rents from anybody? A. Never did. Q. What? A. I never did. Q. That was in 1890? A. That was in 1890. Q. You remained here until 1897? A. 1897. Q. Never paid a dollar taxes? A. Never did. Q. Never paid a penny interest? A. Never did. Q. Never received a penny rent? A. Never did. Q. Never attempted to pay any part of the mortgage? A. Never did. Q. Never assumed

possession of the property? A. Except as it stood in my name. Q. Well, you never assumed possession? You never went there and took possession? A. I never went there and took possession, no. Q. No. You never had anybody there in possession for you, so far as you know? A. No. Q. You a man of wealth at that time? A. No. Q. Quite limited circumstances, were you not? A. Comparatively so."

In the examination of this witness alone there are many more pages of similar evidence without objection to a single question or motion to strike out a single answer. And the testimony of the other witnesses is presented in the same slovenly manner.

### Excerpt No. 2.

The question to the witness, a searcher in the county clerk's office, asked if he found a certain deed on record. There is a whole printed page of elaborate objections, but at the end of the discussion the objections are overruled, and no exception taken, the witness answering in the negative. This is a sample of many other pages where multitudinous objections, which challenge attention and analysis, are needlessly presented, since no exception is reserved.