## UNITED STATES v. COOPER et al.

(District Court, N. D. Iowa, E. D.   February 26, 1923.)

Nos. 4422–4430, 4465–4468.

**1. Criminal law ⟨⟩395—Searches and seizures ⟨⟩7—Corporate books and papers, lawfully obtained, are admissible in evidence against an officer of the corporation; "unreasonable search and seizure."**

Diversion of corporate books and papers, possession of which has been lawfully obtained by the Internal Revenue Department under Revenue Act 1918, § 1305 (Comp. St. Ann. Supp. 1919, §§ 6371½c–6371½e), to uses of a criminal prosecution against an officer of the corporation, is not equivalent to an unreasonable search and seizure, within Const. Amend. 4, since such books and papers were not those of the individual defendant, in which he is made "secure" by the amendment, and he is not entitled to have the evidence gained from them suppressed.

**2. Criminal law ⟨⟩395—Searches and seizures ⟨⟩5—Papers taken from defendant under revenue law not admissible against him in criminal prosecution, but will be returned to defendant.**

Private books and papers of an individual, taken from his possession by agents of the Commissioner of Internal Revenue, under Revenue Act 1918, § 1305 (Comp. St. Ann. Supp. 1919, §§ 6371½c–6371½e), may not be used to furnish evidence against him in a criminal prosecution, but on his application will be ordered returned to him.

**3. Indictment and information ⟨⟩10—That incompetent evidence was presented to grand jury not ground for setting aside.**

An indictment will not be set aside, because incompetent evidence or evidence unlawfully obtained was presented to the grand jury, unless it affirmatively appears that there was no legal evidence on which it might have been based.

Criminal prosecutions by the United States against William F. Cooper, Austin A. Cooper, Katharyn J. Cooper, and Phillip F. Ryder. On petition of defendants for return of books and papers and for their suppression as evidence, granted in part, and denied in part. Also on demurrer to plea in abatement. Demurrer sustained.

G. P. Linville, U. S. Atty., and H. R. Trewin, Asst. U. S. Atty., both of Cedar Rapids, Iowa, and G. N. Murdock, Atty. for Bureau of Internal Revenue, of Chicago, Ill., for the United States.

Brown, Lacy & Clewell, of Dubuque, Iowa, and Kelleher & Mitchell, of Ft. Dodge, Iowa, for defendants.

SCOTT, District Judge.   The United States grand jury for the Northern district of Iowa, drawn and impaneled in the Cedar Rapids division at the April, 1922, term, returned nine indictments against the defendants William F. Cooper, Austin A. Cooper, and Katharyn J.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Cooper. Three of the indictments were against William F. Cooper and Austin A. Cooper jointly, two against William F. Cooper, two against Austin A. Cooper, and two against Katharyn J. Cooper. All of the indictments grew out of the alleged acts of the respective defendants in connection with income tax returns of the individual defendants and of the corporations in which they were stockholders and of which William F. Cooper and Austin A. Cooper were officers. Some of these indictments charge a violation of section 253 of an act entitled "An act to provide revenue and for other purposes," approved February 24, 1919 (Comp. St. Ann. Supp. 1919, § 6336⅛v), and making false and fraudulent returns under said Act; others charge perjury in violation of section 125 of the federal Penal Code (Comp. St. § 10295); others charge conspiracy in violation of section 37 of the federal Penal Code (Comp. St. § 10201). The grand jury drawn and impaneled for the Eastern division of said district at the April, 1922, term returned four additional indictments, two against William F. Cooper and Austin A. Cooper jointly, one against William F. Cooper, Austin A. Cooper, and Phillip F. Ryder jointly, and one against Austin A. Cooper and Phillip F. Ryder jointly. These indictments were also based on the alleged acts of the defendants in connection with the violation of the revenue laws and connected with returns of corporations of which the defendants were stockholders and officers.

The cases based upon indictments returned in the Cedar Rapids division were transferred to the Eastern division, and at the April term of said court, holden at Dubuque, and on the 27th day of April, 1922, the defendants appeared, waived formal arraignment, and entered pleas of not guilty to all of the indictments, and on request of the defendants it was ordered by the court that the pleas so entered might be withdrawn with leave to attack the indictments by motion or demurrer on or before November 1, 1922. Later by stipulation duly approved by the court this time was extended to November 20, 1922.

On November 20, 1922, each defendant in the respective cases filed a petition for an order commanding the return of books, papers, and memoranda, and to suppress and restrain the use thereof and of certain testimony, statements, and evidence on the trial of the indictment in such case. In these petitions, all of which were similar in form and substance, the petitioner alleges that about the 21st day of April, 1921, Charles F. Reilly, A. J. Nelson, and J. H. Sherlock, and others whose names are unknown, all of whom were internal revenue agents and employees of the Bureau of Internal Revenue of the Treasury Department of the United States, acting under the authority of the Commissioner of the Internal Revenue and of the laws of the United States, and particularly section 1305 of the Act of Congress approved February 24, 1919 (Comp. St. Ann. Supp. 1919, §§ 6371½c–6371½e), made demand at the city of Dubuque, Iowa, for the production of certain books, records, papers, writings, and memoranda in order that the same might be by them inspected and examined for the purpose of ascertaining the correctness of certain returns of income and excess profits taxes and for the purpose of making returns thereof where none had been made; that said demands were made by said persons in their capacity as officers of the United States and internal revenue officers, and un-

der said section 1305 which confers upon the Commissioner of Internal Revenue, authority to examine books, papers, records, and memoranda bearing upon the liability of persons for taxes and making returns under the revenue laws, and said officers made divers demands from time to time during the months of April, May, June, July, and August of the year 1921, and further demanded pursuant to the provisions of said statute the attendance of the defendants and the making of statements by the defendants and the giving of their testimony on certain matters required by law to be included within the said returns; that said demands were peremptory, some of which were oral and some written, and were accompanied by statements and representations that said officers so demanding the same were authorized to and would enforce their said demands by duress and compulsion; that by means of said demands and under compulsion the said officers compelled and enforced for the purposes aforesaid, the delivery of books, records, papers, writings, and memoranda of the defendants and of other individuals and of corporations including A. A. Cooper Wagon & Buggy Company and A. A. Cooper, Incorporated, both of which concerns are alleged to be corporations of which the defendants were stockholders and said William F. Cooper and Austin A. Cooper officers. The petitions then set forth a description of the books, papers, documents, etc., some of which appear to be the corporate records of A. A. Cooper Wagon & Buggy Company, and others of A. A. Cooper, Incorporated, and others appear to be the private books and papers of others of the defendants. Respecting some of the books and documents mentioned their character is uncertain whether corporate or private.

The respective petitions set forth that after the revenue officials so obtained possession of the books, records, papers, etc., without the consent of the defendants, they delivered the same to certain officers of the Department of Justice of the United States, including the United States attorney for the Northern district of Iowa, which officers of the Department of Justice laid the same before the respective grand juries aforesaid, and upon such evidence and such evidence only obtained the return of the respective indictments referred to; that such acts of the revenue officers aforesaid and of the officers of the Department of Justice aforesaid were in violation of the rights of the defendants under the Fourth and Fifth Amendments of the Constitution of the United States; that the diversion of the evidence by such revenue officials to the purposes of criminal prosecution and the reception and use thereof by the officers of the Department of Justice was equivalent to unreasonable search and seizure under the Fourth Amendment of the Constitution of the United States; and that such diversion and use was equivalent to compelling such defendant to be a witness against himself in a criminal case in violation of the Fifth Amendment of the Constitution of the United States. The petitioner then prays for an order commanding the return of such books, records, papers, etc., the suppression of the same, including all testimony and evidence so obtained and all clues and leads obtained therefrom. The defendant further prays that oral evidence may be heard in support of the allegations of such petition and that at the time of such hearing the court order and require the delivery of such books, papers, and other evidence.

On the said 20th day of November, 1922, the respective defendants in each case likewise filed a plea in abatement attacking the indictments in the respective cases, and setting up and alleging the same facts as were alleged in the application for the return of the books, records, papers, and other evidence, and further alleging that said indictments so procured and returned were procured and returned upon the evidence contained in such books, records, papers, and documents and clues and leads obtained therefrom, and that alone, and that all of the evidence laid before the respective grand juries was so obtained in violation of the defendants' rights under the Fourth and Fifth Amendments of the Constitution of the United States, and praying that the United States be required to answer such pleading and join issue thereon, and that such issue be tried, and that said indictments be quashed and dismissed.

To the petitions of the defendants so filed the government, through the United States attorney for the Northern district of Iowa, answered, resisting the prayer of said petitions. The answers themselves are very voluminous and argumentative, but in substance they deny compulsion, set up voluntary delivery of the books and documents by the defendants, and plead that a large portion of the books and documents so delivered were corporate records, and that no invasion of any of the defendants' constitutional rights was effected, and ask that the prayer of the defendants be denied, and that such written and documentary evidence be impounded and held for use on the trial of the respective causes.

To the defendants' pleas in abatement the government interposed demurrers and claims that it ought not to be required to answer the same. The court by consent of parties set down for hearing and argument the demurrers to the pleas and the petitions for the return of books and papers, so far as the answers thereto raised legal questions, and these matters were argued at length and submitted upon very ably and carefully prepared briefs on the 16th day of January, 1923.

I shall first consider the question of what relief, if any, the defendants may be entitled to under their petitions for return of books and papers, and to what extent they should be permitted to offer oral testimony in support of the same. Defendants' counsel, in their argument and in their briefs, lay down a series of propositions from which they reason, reaching the conclusion that defendants' petitions for return of books and papers and suppression of evidence should be allowed, and the legal sufficiency of the plea in abatement sustained. Counsel's first proposition is:

That "a taking by federal officials for use in a criminal prosecution, or diversion to such use, of books and papers, access to which was obtained under the guise of inspecting and examining for the determination of a civil tax liability, constitutes an unreasonable seizure, in violation of the federal Constitution."

The constitutional provisions urged are those embodied in the Fourth and Fifth Amendments to that document, the pertinent parts of which are quoted:

Article IV: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by

oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article V: "No person shall be * * * compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law. * * *"

Counsel bottom their proposition above quoted upon the holding in Boyd v. United States, 116 U. S. 616, 633, 6 Sup. Ct. 524, 29 L. Ed. 746. Mr. Justice Bradley delivered the opinion of the court in that case, and although it has been the subject of criticism by some in speaking without judicial responsibility, its pronouncements have been the great landmarks of interpretation on these constitutional provisions. The case was one upon information for the forfeiture of property (35 cases of plate glass) seized bv the collector of revenue under the Revenue Act of June 22, 1874. The sections of the act in question purported to authorize a court of the United States in certain revenue cases, on motion of the government attorney, to require the defendant or claimant to produce in court his private books, invoices, and papers, or else the allegations of the attorney to be taken as confessed. An order of court was made in the case under section 5 of the act (Comp. St. § 5799), reouiring the claimants of the goods to produce a certain invoice in court for the inspection of the government attorney and to be offered in evidence against them. The charge was that the property was imported into the United States subject to the payment of duties, and that the owners or agents of the merchandise or others had committed the alleged fraud. The defendants entered claim for the goods and took issue upon the allegation of forfeiture. On the trial it was important to show the quantity and value of the goods. In proof the district attorney offered the order of court mentioned. Claimants, in obedience to the order, but objecting to its validity and to the constitutionality of the law, produced the invoice, and, when it was offered in evidence, objected to its reception on the ground that, in a suit for forfeiture, no evidence can be compelled from the claimants themselves, and also that the statute, so far as it compels evidence to be produced against the claimants, was unconstitutional and void. The evidence was received, followed by verdict and judgment for the United States, which was affirmed in the Circuit Court, and appealed to the United States Supreme Court. The opinion is remarkable both for its historical research and the profundity of its reasoning. Without indulging in extended quotation or comment on that case, I think I may say that the fundamental principle there announced, as well as its application to the case there under consideration may be found in a single sentence of that opinion, which I now quote:

"As, therefore, suits for penalties and forfeitures incurred by the commission of offenses against the law, are of this quasi criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the Fourth Amendment of the Constitution, and of that portion of the Fifth Amendment which declares that no person shall be compelled in any criminal case to be a witness against himself; and we are further of opinion that a compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution, and is the equivalent of a search and seizure—and an unreasonable search and seizure—within the meaning of the Fourth Amendment."

. It will here be noted that the elements involved in the conclusion of the court were:

(a) "Compulsory production;" (b) "private books and papers;" (c) "a criminal or quasi criminal case; that such deed is compelling him to be a witness against himself within the meaning of the Fifth Amendment;" and (d) "is the equivalent of an unreasonable search and seizure within the meaning of the Fourth Amendment."

The learned justice had previously pointed out the intimate relation between the Fourth and Fifth Amendments, and in so doing said:

"They throw great light on each other, for the 'unreasonable searches and seizures' condemned in the Fourth Amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment; and compelling a man 'in a criminal case to be a witness against himself,' which is condemned in the Fifth Amendment, throws light on the question as to what is an 'unreasonable search and seizure' within the meaning of the Fourth Amendment. And we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself. We think it is within the clear intent and meaning of those terms."

It will be observed that one of the conclusions reached by the court in the Boyd Case was:

"That a compulsory production of the private books and papers of the owner of goods sought to be forfeited * * * is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution, and is the equivalent of a search and seizure—an unreasonable search and seizure—within the meaning of the Fourth Amendment."

The unreasonable search and seizure in the Boyd Case was not an actual one, but that which was an equivalent, because it compelled the evidence formerly obtained by unreasonable actual search and seizure, and which, if so obtained since the enactment of the Fourth Amendment, would violate that constitutional provision. I think the quoted proposition laid down by defendants' counsel in this case fails to involve one element of the pronouncement in the Boyd Case; i. e., the private nature of the books and papers, and thus that brings us to counsel's second proposition, which is as follows:

"Knowledge of the books and papers of corporations of which the defendants are officers, having been obtained by taxing officials for tax purposes, and having been improperly used as a basis for criminal prosecution, such books and all information, clues, and leads, they furnish, are subject to suppression."

In arguing this second proposition, counsel frankly concede that the sanctity which surrounds private books and papers does not attend corporate records, books and papers. They concede that books and papers of a corporation are subject to an examination when required by competent authority, and that an officer having their custody may not withhold them, even upon the ground that they tend to incriminate him. This doctrine seems to have been settled by the cases which counsel have cited; Wilson v. United States, 221 U. S. 361, 31 Sup. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558; Wheeler v. United States, 226 U. S. 478, 33 Sup. Ct. 158, 57 L. Ed. 309: Grant v. United States, 227 U. S. 74, 33 Sup. Ct. 190, 57 L. Ed. 423. But counsel say:

288 F.—39

"It by no means follows that because, had proper process been availed of, the production of the corporate records could be obtained, that in this case the constitutional provisions have not been violated; and if violated the papers are subject to suppression, where the government seeks to use them upon which to found an indictment, or to convict upon an indictment already found. The Supreme Court has put this proposition beyond controversy in the Silverthorne Case." Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319.

In the Silverthorne Case, Frederick W. Silverthorne, officer of the Silverthorne Lumber Company, a corporation, had been ordered to produce books and papers of that company, and had refused, been cited for contempt, and ordered imprisoned. An indictment upon a single charge had been brought against said Silverthorne and his father, and they had been arrested, and while they were detained representatives of the Department of Justice and the United States marshal, without warrant or other authority, had "made a clean sweep of all the books, papers, and documents found" in the office of the corporation. All the employés of the corporation were taken or directed to the office of the district attorney, to which all the books and papers were taken. Application was made for the return of the documents unlawfully taken, which application was resisted, and the documents were presented as evidence before the grand jury. The District Court ordered a return of the originals, but took and impounded photographs and copies. Subpœnas to produce the originals then were served, and, on the refusal, the court made an order that the subpœnas should be complied with, and the refusal to obey such order was the contempt alleged. The Supreme Court held, following Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, that there had been an unreasonable search and seizure, in violation of the Fourth Amendment; that the guaranty of the Fourth Amendment protected corporations as well as individuals; that a violation of the Fourth Amendment by an unreasonable search and seizure of corporate books and papers forbids the using of them in evidence in a criminal proceeding against the individual officers, rendering such evidence inadmissible, even though such evidence could have been obtained by proceeding in a lawful way. The principle there recognized was that evidence obtained by a violation of the Constitution of the United States was tainted and became outlawed. It must not be overlooked, however, that in the Silverthorne Case the act complained of was not an "equivalent." The unreasonable search and seizure was an actual one, consummated by "force and arms."

[1] Now the contention of defendants' counsel in this case seems to be that, because an actual unreasonable search and seizure in violation of the Fourth Amendment of the Constitution of the United States taints and outlaws corporate books and papers as evidence against the individual, it necessarily follows that the diversion of corporate books and papers, possession of which have been lawfully obtained, to uses of a criminal prosecution against the individual officer, is equivalent to an unreasonable search and seizure, and taints and outlaws such evidence. It seems to me there is a fallacy in this reasoning. The "equivalent" doctrine adopted in the Boyd Case, which respected private papers, I think rests upon the fact that the compulsion there held to

be an equivalent to search and seizure was compulsion of that which is made "secure" to the defendant by the Fourth Amendment, and which in no circumstances could he be compelled to produce. I do not think it necessarily follows, from the conclusion thus reached, that the diversion of corporate documents and papers lawfully obtained for revenue purposes to use in a criminal prosecution of an officer of the corporation is equivalent to an unreasonable search and seizure, because in such case the books and papers were not those made secure to the individual under the Fourth Amendment, but were books and papers which could have been lawfully compelled as evidence against him. I do not think the reasoning of either the Silverthorne Case, or Flagg v. United States, 233 Fed. 481, 147 C. C. A. 367, approved in the Silverthorne Case, necessitates the conclusion urged by counsel. In my opinion, the corporate records mentioned and referred to in the petitions should not be ordered returned, or the evidence gained from them suppressed.

[2] However, so far as concerns the private books, papers, and records of the several defendants, I am inclined to the opinion that the rule adopted in the case of Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, and followed in Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, United States v. Abrams (D. C.) 230 Fed. 313, and many other cases cited by counsel, should apply, and that upon proof of their private character, if obtained as alleged, they should be ordered returned and suppressed as evidence, including all leads and clues depending thereon.

Counsel for the government have filed answer and resistance to each of the petitions for the return of books and papers, and have attached to and accompanied the same by a number of affidavits indicating voluntary delivery by the defendants of the books and papers and documents. In my opinion I should not accept these affidavits in the circumstances, inasmuch as the hearing and argument had and received was with the understanding and purpose that they pertained to the submission of the demurrer to the plea in abatement, and the legal sufficiency of the petitions for return of documents. I think the petitions should be set down for hearing as prayed, upon notice to be fixed by the court.

[3] In view of the conclusions reached the demurrers to the pleas in abatement must necessarily be sustained as the pleas concede that a very substantial part of the evidence used before the grand jury was made up of evidence other than the private books, papers and documents of the defendants. Judge Lewis, in Anderson v. United States, 273 Fed. 20, 29, speaking for the Court of Appeals of the Eighth Circuit, said:

"We understand the rule to be that an indictment cannot be set aside or avoided on such an objection unless it affirmatively appear that there was no evidence of the commission of the offenses presented to the grand jury, or unless all of the evidence which it heard on the inquiry was unlawfully procured in violation of some fundamental right of the party indicted, and which would be barred on the trial as incompetent and inadmissible against him."

Upon this point Judge Lewis cites McKinney v. United States, 199 Fed. 25, 117 C. C. A. 403; Holt v. United States, 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138; Chadwick v. United States, 141 Fed. 225, 72 C. C. A. 343; McGregor v. United States, 134 Fed. 187, 69 C. C. A. 477; Radford v. United States, 129 Fed. 49, 63 C. C. A. 491; Hillman v. United States, 192 Fed. 264, 112 C. C. A. 522; State v. Shreve, 137 Mo. 1, 38 S. W. 548; People v. Lauder, 82 Mich. 109, 46 N. W. 965; State v. Dayton, 23 N. J. Law, 49, 53 Am. Dec. 270; Stewart v. State, 24 Ind. 142; State v. Fasset, 16 Conn. 457; Agee v. State, 117 Ala. 169, 23 South. 486. In my opinion, Judge Lewis stated the correct rule as it has been crystallized by the authorities cited.

An order will be entered in conformity with this opinion.