**COLBECK et al. v. UNITED STATES, and three other cases.** *

(Circuit Court of Appeals, Seventh Circuit. December 8, 1925. Rehearing Denied January 13, 1926.)

Nos. 3558, 3560, 3562, 3618.

**1. Criminal law ⟨⟩1149—Indictment and information ⟨⟩136—Motion to quash indictment addressed to court's discretion, and decision not reviewable on writ of error.**

Motion to quash indictment is always addressed to discretion of court, and a decision thereon cannot be reviewed on writ of error.

**2. Indictment and information ⟨⟩10—Convict not incompetent witness, on whose testimony indictment cannot be found.**

A person convicted of an infamous crime is not an incompetent witness, on whose testimony indictment cannot be found.

**3. Indictment and information ⟨⟩138—Motion to quash held bad as alleging mere conclusions and no facts.**

Motion to quash indictment because it "was not found * * * on legal and competent evidence, but was found and based wholly and entirely on illegal, incompetent, and hearsay evidence," held bad on its face as alleging mere conclusions and no facts.

**4. Criminal law ⟨⟩301—Indictment and information ⟨⟩139—Refusal to permit withdrawal of pleas of not guilty and filing of motion to quash indictment held within court's discretion.**

Refusal to permit defendants, just before trial, to withdraw pleas of not guilty and file motion, sworn to on information and belief, to quash indictment, returned on illegal, incompetent, and insufficient evidence, held within court's discretion.

**5. Criminal law ⟨⟩572—Essentials of defense of "alibi" stated.**

Defense of "alibi" means that defendant was away from scene when crime was committed, and hence could have taken no part in it, and, to be effective, it must appear that defendant was elsewhere during all activities going to make up crime and show his connection with it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Alibi.]

**6. Criminal law ⟨⟩69—Accessories before the fact are principals.**

Under Criminal Code, § 332 (Comp. St. § 10506), accessories before the fact are principals.

**7. Criminal law ⟨⟩59(5)—Actual presence when crime is committed not essential to guilt of aiding and abetting.**

Actual presence when crime is committed is not essential to guilt of aiding and abetting its commission.

**8. Criminal law ⟨⟩1172(1)—Instructions belittling defense of alibi held not prejudicial.**

Where evidence of alibi went only to time of actual robbery, ard no effort was made to

show that defendants were not at places where, at times when, evidence tended to show they were aiding and abetting, crime, as charged, by assisting in preparations for it, they were not injured if instructions "belittled and disparaged" such defense.

**9. Criminal law ⟨⟩1170½(1)—Witnesses ⟨⟩357—Exclusion of impeaching witnesses' testimony that they would not believe witness under oath, not error, and not prejudicial.**

Refusal to permit impeaching witnesses to state whether they would believe witness under oath held not error, and in any event not prejudicial, where he was admitted convict, and admitted his guilt in instant case, other witnesses had testified that his general reputation for truth and veracity was bad, and no contrary testimony was offered by government.

**10. Criminal law ⟨⟩789(2)—Instruction defining reasonable doubt held not erroneous.**

Instruction defining reasonable doubt held not erroneous.

**11. Criminal law ⟨⟩1059(1)—Exception to instruction held insufficient.**

Exception to "supplemental instruction upon the subject of reasonable doubt" held insufficient to present any question for review.

**12. Post office ⟨⟩49—Evidence held to sustain conviction of robbing persons in charge of mail.**

Evidence of defendant's activity in preparation for mail robbery, to be committed when conditions warranted, justified conviction under Criminal Code, §§ 194, 197 (Comp. St. §§ 10364, 10367), of robbing persons in charge of mail, though his presence at time of robbery, after date first intended, was not shown, and court's instruction and refusal of defendant's instruction as to abandonment of enterprise by him were not erroneous.

In Error to the District Court of the United States for the Southern Division of the Southern District of Illinois.

William P. Colbeck, Oliver Daugherty, Stephen Ryan, David Robinson, Charles Smith, Charles Lanham, Gustav B. Dietmeyer, Frank Hackethal, and Frank Eppelsheimer were convicted of violations of Criminal Code, §§ 194, 197, and they bring error. Affirmed.

James E. Carroll and William Baer, both of St. Louis, Mo., and L. S. Harvey, of Kansas City, Kan., for plaintiffs in error Colbeck·and others.

Thomas J. Rowe, Sr., of St. Louis, Mo., for plaintiffs in error Lanham and another.

Edmund Burke, of Springfield, Ill., for plaintiff in error Hackethal.

Edward Pree, of Springfield, Ill., for plaintiff in error Eppelsheimer.

Thomas Williamson, of Springfield, Ill., and Horace L. Dyer, of St. Louis, Mo., for the United States.

*Petition of Hackethal for certiorari denied 46 S. Ct. 474, 70 L. Ed. ——.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The plaintiffs in error, with several others, were charged in the court below with the violation of sections 194 and 197 of the Criminal Code (Comp. St. §§ 10364, 10367). The indictment is in four counts, and charges all the defendants, in the first count with robbing persons having lawful charge of the mails; in the second, with robbing such persons and in effecting the robbery, putting the life of the persons having custody of the mails in jeopardy by the use of deadly weapons; in the third, with receiving and concealing stolen mail matter, knowing that it was stolen; and, in the fourth, with having possession of stolen mail matter with knowledge that it was stolen. Plaintiff in error Dietmeyer was found guilty on counts 1 and 2, and the other eight plaintiffs in error were found guilty on all counts. Each was sentenced to the penitentiary for 25 years. Some of them assigned errors and petitioned for writs together and some separately. They are all here on one record; their cases have been heard together, and will be so disposed of. The errors chiefly relied on in the briefs and urged upon the argument are: (a) The overruling of the motions to quash the indictment; (b) the instructions upon alibi; (c) the refusal to allow impeaching witnesses to say whether they would believe an impeached witness under oath; and (d) the instruction upon reasonable doubt.

(a) The motion to quash.

The indictment was returned on September 3, 1924. On October 10, Dietmeyer and Lanham filed their motions to quash. These motions were identical in terms and were based wholly upon the alleged fact that the indictment was found and presented on the evidence of a convict. On October 21, Eppelsheimer filed his motion to quash "because said indictment was not found and presented by the grand jury on legal and competent evidence, but was found and based wholly and entirely on illegal, incompetent, and hearsay evidence." No other conclusion and no facts whatever were alleged in his motion. The case came on for trial on November 10, 1924, and on that morning, just before the trial began, while the jury was in waiting, Colbeck, Daugherty, Robinson, Smith, and Ryan asked leave to withdraw their pleas of not guilty and to file a motion to quash. This motion to quash was based upon the allegation that the indictment was returned upon illegal and incompetent evidence and without legal evidence to connect defendants with the crime charged. These motions were all sworn to upon information and belief.

[1, 2] "A motion to quash is always addressed to the discretion of the court, a decision upon it is not error, and cannot be reviewed on a writ of error." United States v. Hamilton, 109 U. S. 63, 3 S. Ct. 9, 27 L. Ed. 857; United States v. Rosenberg, 7 Wall. 580, 19 L. Ed. 263; Logan v. United States, 144 U. S. 263, 282, 12 S. Ct. 617, 36 L. Ed. 429; Durland v. United States, 161 U. S. 306, 314, 16 S. Ct. 508, 40 L. Ed. 709; Radford v. United States, 129 F. 49; 51, 63 C. C. A. 491. But, aside from this, the motions of Dietmeyer and Lanham were based upon the erroneous notion that a person convicted of an infamous crime is an incompetent witness. The old common-law rule of the incompetency of felons as witnesses is no longer in force in the courts of the United States. Rosen v. United States, 245 U. S. 467, 38 S. Ct. 148, 62 L. Ed. 406; Peace v. United States (C. C. A.) 278 F. 180.

[3, 4] Eppelsheimer's motion stated no facts and alleged mere conclusions and was bad on its face. The request of Colbeck, Daugherty, Robinson, Smith, and Ryan for permission to withdraw their pleas of not guilty and file motion to quash came just as the court was entering upon the trial, and the refusal to permit them to withdraw their pleas of not guilty and file their motion was purely within the discretion of the court. On October 31, the motion of Eppelsheimer came on to be heard. He called the district attorney to the stand, who testified that persons, eyewitnesses, testified before the grand jury to the subject-matter in all its phases, and, in answer to a question, whether there was other evidence before the jury besides the statements of the convict to connect the defendant with the crime the district attorney said "there was positive identification by witnesses." So it appears there was already evidence in the case ten days before the day of trial that competent and legal evidence upon all phases of the matter had been presented to the grand jury. This case illustrates the abuses to which such practices would lead if they were encouraged. If a defendant, without any knowledge of the facts, upon a motion sworn to upon information and belief, can compel a review of the evidence before the grand jury, which returned the indictment against him, to ascertain whether it was competent or sufficient,

then all the evidence received must be brought before the court to be weighed and examined. Such practice should not be tolerated, much less encouraged.

In the case most cited in support of such procedure, the reason given for it is that "no person should be subjected to the expense, vexation, and contumely of a trial for a criminal offense, unless the charge has been investigated, and a reasonable foundation laid for an indictment or information." As stated by the court, in Radford v. United States, supra, after conviction this reason no longer exists, a jury, under the guidance of the judge, having heard the evidence in open court and having come to the conclusion, not only that there was reasonable ground for the charge but also that the charge was true.

(b) Alibi.

[5-8] This defense means that the defendant was elsewhere, away from the scene of the crime when it was committed, and therefore could not have taken part in it. To be effective, it must appear that the defendant was elsewhere during all the activities which go to make up the crime and show his connection with it. The defendants were all indicted as principals. There was evidence to show that a part only perpetrated the actual robbery, while the others were accessories before the fact. Under section 332 of the Criminal Code (Comp. St. § 10506), accessories before the fact are principals, and it has been held that an accessory before the fact may be charged as a principal, and the charge will be sustained by proof showing him to be an accessory before the fact. Vane v. United States, 254 F. 32, 165 C. C. A. 442; Di Preta v. United States (C. C. A.) 270 F. 73. It is not necessary that one who aids and abets the commission of a crime be present when the crime is committed. Parisi v. United States (C. C. A.) 279 F. 253, 255. In Jin Fuey Moy v. United States, 254 U. S. 189, 41 S. Ct. 98, 65 L. Ed. 214, the Supreme Court upheld the conviction of a physician upon a charge of "selling" morphine when the evidence showed him to have aided and abetted the sale by issuing a prescription upon which a druggist made the sale. The evidence of the so-called alibi went only to the time of the actual robbery. There was no effort to show that the defendants urging this defense were not at the places at the times when the evidence tended to show them aiding and abetting the crime by assisting in the preparations for it. It did not pretend to cover the activities alleged against them and therefore it was no alibi at all. The complaint is that the court, in its instructions upon this point, "belittled and disparaged" this defense. As the showing made did not rise to the dignity of an alibi, it is difficult to see how the defendants were injured by the court's treatment of it.

(c) Refusal to allow the question to be put to the impeaching witnesses whether they would believe Renard under oath.

[9] The impeaching witnesses were asked if they knew the general reputation of Renard in the community in which he resided for truth and veracity. Upon answering "Yes," they were asked what it was, and each said it was bad. They were then asked, "Based on what you have said as to his general reputation for truth and veracity, would you believe him on oath?" The government's objection to this question was sustained, and the ruling excepted to. There is conflict in the decisions upon this question. The Supreme Court in Teese et al. v. Huntingdon et al., 23 How. 2, 16 L. Ed. 479, said:

"According to the views of Mr. Greenleaf, the inquiry in all cases should be restricted to the general reputation of the witness for truth and veracity; and he also expresses the opinion that the weight of authority in the American courts is against allowing the question to be put to the impeaching witness whether he would believe the other on his oath. In the last edition of his work on the law of evidence, he refers to several decided cases, which appear to support these positions; and it must be admitted that some of these decisions, as well as others that have since been made to the same effect, are enforced by reasons drawn from the analogies of the law, to which it would be difficult to give any satisfactory answer," citing numerous cases.

We think the weight of authority sustains the ruling below. But suppose the ruling should have been the other way, was the error a substantial one? Renard was an admitted convict. He was brought from prison to testify. He admitted his guilt in the instant case and testified to his participation in it. Witnesses had testified that his general reputation for truth and veracity was bad and no testimony to the contrary was offered by the government. It is not perceived how his standing as a witness could be further impaired by allowing witnesses to express their opinion that they did not regard him worthy of belief. No substantial injury was done plaintiffs in error by this ruling.

(d) Reasonable doubt.

[10] At the close of the charge to the jury, the court asked defendant's counsel if they had any suggestions to make. The record shows this to have occurred.

"Mr. Baer: The defendants and each of them desire to except to the charge of the court upon the subject of reasonable doubt, as not being a proper statement of the law upon the subject of reasonable doubt.

"The Court: In what respect?

"Mr. Baer: Well, I think it leaves to the jury the question of this doubt based upon a reason, and does not advise the jury specifically that a reasonable doubt, if it is created, is of itself sufficient, in the absence of all other evidence, to warrant an acquittal of the defendants."

The court had already in its instructions, after defining a reasonable doubt, specifically told the jury that if they had such a doubt as to the guilt of any or either of the defendants in the case, it was their duty to give such defendants the benefit of such doubt. After the jury had been out for some time, the court called them back and asked whether any question of law was troubling them, whereupon this occurred:

"The Juror: Well, we have had some discussion in regard to what would be considered a reasonable doubt.

"The Court: A reasonable doubt, gentlemen, is just such a doubt as the name implies—a doubt based upon reason, and that reason being based upon the evidence or lack of evidence in the case. A reasonable doubt is not the possibility of a doubt, nor the probability of a doubt, nor a speculative doubt, but a substantial doubt, based upon the evidence or lack of evidence in the case. If, upon a consideration of all of the evidence in the case, you have a conviction amounting to a moral certainty that such and such is the case, then the proof is beyond a reasonable doubt. Is there anything else?

"Mr. Baer: The defendants and each of them except to the supplemental instruction given by the court upon the subject of alibi and upon the subject of reasonable doubt."

[11] Under the rules of practice in this situation, the exception to what is called the supplemental instruction on reasonable doubt presents no question at all. The exception is to the "supplemental instruction upon the subject of reasonable doubt." It does not point out wherein the instruction is wrong and thus give the court an opportunity to correct it. But we fail to see any error in the instruction complained of. It certainly is sound as far as it goes, and is not subject to the meticulous criticisms made of it in the briefs.

[12] The court directed the jury to find Dietmeyer not guilty on counts 3 and 4, apparently because there was no direct evidence that he had shared in the loot. His counsel insist that because of this, and the fact that he was not shown to be present at the time of the robbery, the case failed as to him. This ignores the fact that there was evidence before the jury which, if believed, was sufficient to show him quite active in the preparations for the robbery. As shown above, his presence at the robbery was not essential. Further complaint is made on behalf of Dietmeyer of the refusal to give his instruction as to his abandonment of the enterprise and of the court's instruction on this point. The request and the objections to the instructions given are based upon an erroneous conception of the crime charged and of the evidence adduced to establish it. Counsel argue that the joint enterprise in which he is shown to have been engaged had for its object the robbery of the mails on April 14 only, and did not contemplate the robbery which was committed on May 26. The evidence showed a design and plan to rob the mail coming into Staunton when the circumstances warranted. It was first designed to rob it on April 14, but "something went wrong" as one witness said, and the crime was postponed and actually committed May 26. Dietmeyer was shown to have been active in the preparations for robbing the mail upon its arrival at Staunton whenever it arrived and the surroundings were propitious. This broad and general plan included the robbery which was effected. He therefore aided and abetted in the commission of that robbery.

There is no substantial error in the record, and the judgment is affirmed.